[S. F. No. 2912. Department One.—May 6, 1905.]

# DAVID CUTTEN, Respondent, v. C. E. PEARSALL, Appellant.

COMMISSION FOR SALE OF LAND—SUBSTITUTED CONTRACT—PAROL EVIDENCE.—Where a written contract sued upon, giving a definite commission upon the sale of land, was evidently intended as a substitute for a prior contract, giving different terms relating to a particular proposed sale, which was omitted in the contract sued upon, the two contracts are not to be taken together as one contract, and there can be no parol evidence of any different terms or intention of the parties than that expressed in the contract sued upon. It is only an ambiguous description in the contract sued upon that parol evidence may be admitted to explain.

ID.—PLEADING—ADMISSION OF EXECUTION.—Where the complaint contained a copy of the contract sued upon, its genuineness and due execution were admitted by the failure of the defendant to deny the same in a verified answer.

ID.—NONSUIT PROPERLY DENIED.—Where there was evidence tending to sustain the allegations of the complaint that the plaintiff duly performed the conditions of the contract to be performed by him, that the proposed sale was consummated, and that no part of the agreed sum was paid, a motion for a nonsuit was properly denied.

ID.—EVIDENCE—PROOF OF SALE.—Evidence was admissible for the plaintiff to prove a sale to other parties than those mentioned in the former contract.

ID.—QUESTION FOR JURY—AMBIGUITY OF DESCRIPTION—CONFLICTING EVIDENCE—INSTRUCTIONS.—Where the evidence was conflicting as to what was intended by an ambiguous descriptive phrase in the contract, and whether or not it was intended to refer to the prior proposed sale or to any sale to be consummated, it was a question for the jury what was the real intention of the parties; and where the court substantially left that question to the jury, in instructions that were subject to criticism, they could not be prejudicial, if not misleading to the jury. [Per Shaw, J., and Angellotti, J.]

ID.—QUESTION FOR COURT—MATTER LEFT TO JURY—ERROR NOT PREJUDICIAL.—It was proper for the court to determine the meaning of the contract sued upon; but where an instruction leaving its meaning to the jury was not prejudicial to the appellant, it is not ground for reversal. [Per Van Dyke, J.]

ID.—INSTRUCTIONS SUBSTANTIALLY GIVEN.—It was not error to refuse instructions substantially covered by instructions given by the court.

ID.—ORDER DENYING NEW TRIAL—CONFLICTING EVIDENCE.—An order denying a new trial to the defendant will be affirmed where the

evidence was substantially conflicting, and there was sufficient evidence to sustain the verdict for the plaintiff upon his theory of the case.

APPEAL from a judgment of the Superior Court of Humboldt County and from an order denying a new trial. E. W. Wilson, Judge.

The facts are stated in the opinion of the court.

J. N. Gillett, for Appellant.

Ernest Sevier, and Denver Sevier, for Respondent.

VAN DYKE, J.—The complaint in the action under consideration contains three counts: The first is upon an express contract, a copy of which is set forth; the second is a common count in *assumpsit;* the third is a common count for money had and received. The contract set forth in the first count of the complaint is as follows:—

"EUREKA, CALIFORNIA, Dec. 29th, 1899.

"It is agreed by C. E. Pearsall and David Cutten, that his commissions for services rendered in securing lands in T. 8 N., R. 1 E. and T. 8 N., R. 2 E., Humboldt Meridian, and for all services heretofore rendered by him, and for all services hereafter to be rendered by him in the sale of the tract of land on Little River and Maple Creek, known as the Pearsall deal, shall be the sum of $7,500.00, when the sale is consummated.

"(Signed)       C. E. PEARSALL.

"I approve the contract.       B. F. DURPHY."

It is also alleged in the complaint that the plaintiff had duly performed all the conditions of said contract to be performed by him; that the sale mentioned in said contract has been duly consummated, and that the defendant had not paid plaintiff said sum of seventy-five hundred dollars, or any part thereof. The complaint is unverified, and the answer, which is also unverified, contains simply a general denial.

The case was tried before a jury and a verdict rendered in favor of the plaintiff for the sum mentioned,—to wit, seven thousand five hundred dollars,—with interest thereon at the rate of seven per cent per annum from January 24, 1901.

The defendant thereafter moved for a new trial, which was

denied, and he appeals both from the judgment and from the order denying his motion for a new trial.

In support of the appeal the appellant relies upon certain alleged errors committed by the trial court in the admission and exclusion of certain evidence, and in giving and refusing to give certain instructions. The main contention, however, appears to be, and is so admitted by counsel in the oral argument, that the evidence does not support the verdict.

It is claimed that the evidence fails to support the verdict, on the assumption or theory that the contract set forth in the complaint as the basis of the action is not the entire contract between the parties, but that it must be taken in connection with a prior written contract between the parties on the same subject. It appears that in the summer of 1897 plaintiff and defendant were engaged as brokers in the selling of lands in Humboldt County under an oral agreement. The plaintiff in his testimony stated: "I was to get the land together, assist in getting the land together, get it as cheap as possible, and at that time we had an understanding that we would divide the profits equally up to twelve dollars an acre. . . . I did not know who the purchaser was to be until we started in. . . . In November, 1897, Mr. B. F. Durphy came, he was the supposed purchaser or promoter. . . . Mr. Durphy had parties in the east who were going to purchase it. . . . Through the year 1898 the sale was still being made to Mr. Durphy and the men he represented. I understood that he had men in the east who were going to take the land. I did n't care who Mr. Pearsall sold this land to. . . . During all this time Mr. Pearsall was still making the sale to Mr. Durphy and I expected right along through the year 1898 and 1899, every month or two that this sale would be closed. Mr. Durphy told us his plans and what progress he was making."

Finally, the parties entered into the following written contract:—

"This agreement made this 17th day of March, 1899, between C. E. Pearsall of the county of Humboldt, state of California, the party of the first part, and David Cutten of the same county and state, the party of the second part, witnesseth:

"That it is hereby agreed by and between the parties hereto

that the said party of the second part shall aid and assist the said party of the first part in securing titles to, deeds, assignments, transfers, and all other work requisite in selling a tract of 10,000 acres more or less of redwood or other lands, situate in Humboldt County, California, on Little River and Maple Creek in Township 8 North, Ranges 1 and 2 East, Humboldt Meridian, to B. F. Durphy, of Boston, Massachusetts, or to his agent, or to any other person or corporation through him or suggested by him, and in consideration for said services, it is agreed between the parties hereto, that the party of the first part shall pay to the party of the second part after the said lands are sold one half of the product of what remains after deducting all necessary local expenses in making such sale together with the amount paid for said lands, from an average total of $12.00 per acre for each acre sold of the whole amount, and such payment is to cancel all claims the party of the second part may have against the said party of the first part. . . . And it is further agreed between the parties hereto that if for any reason this sale cannot be made, the party of the second part shall have no claim against the party of the first part for services rendered in this matter.''

Prior to the execution of the foregoing contract the parties, Cutten and Pearsall, had been operating under an oral agreement, as already stated. Subsequently it appears that there was some misunderstanding or hitch in the contemplated deal between defendant and Durphy, and the plaintiff became dissatisfied with the terms of the agreement entered into on his part, fearing that in case the lands should be turned over by defendant to some other parties he might lose his commissions or the value of his services entirely. He testifies: ''In the fall of 1899 Mr. Durphy and Mr. Wandesforde and Mr. Pearsall were quarreling among themselves, and the price of the land kept going up until I became alarmed that if the sale was made my profits would be cut out by reason of the increased price of the land, and I wanted Mr. Pearsall to give me a specified sum instead of the commission that I was to receive. This sum was $7,500.00.'' He further testifies: ''I said you folks have your difficulties among yourselves. I want a contract for a stipulated sum. . . . I told him I wanted a contract signed now, before I went any further with

the thing, or else I would see about it, and I wrote up the contract and he signed it, and Mr., Durphy was there, and I said to Mr. Durphy you approve this contract, you see that I will get my money, that is what he approved it for, that is all I cared about. . . . I wanted Mr. Pearsall to sell the lands to anybody.''

It will be seen by reference to the two contracts that the one sued upon is different in two very important points from the contract of March, and the latter was evidently intended between the parties to be substituted for the former. The compensation to the plaintiff for his services was to be a definite sum instead of commissions, and the qualification in the former contract that the sale contemplated was to be "to B. F. Durphy, of Boston, Massachusetts, or to his agent, or to any other person or corporation through or suggested by him," was entirely omitted from the last contract, and in lieu thereof the payment was to be made "when the sale is consummated." This last contract is the one sued upon and the complaint contains a copy thereof, and the genuineness and due execution of such instrument is admitted by the failure of the defendant to deny the same by a verified answer. (Code Civ. Proc., sec. 447.) The terms of the last instrument between the parties—to wit, the one in suit—having been reduced to writing, there can be no evidence of terms other than the contents of the writing, except in certain specified cases, none of which are applicable here. The validity and genuineness of the instrument are admitted by the pleadings, as already shown, and there is no mistake or imperfection in the writing which appears or has been put in issue by the pleadings. (Code Civ. Proc., sec. 1856.) The intention of the parties is to be ascertained from this writing alone. (Civ. Code, sec. 1639.) The only part of the agreement in suit about which there can be any doubt, and in reference to which oral testimony would be permissible at all to explain it, is what is understood as the "Pearsall deal." The plaintiff testifies that the sale of this land was known as the "Pearsall deal," and the witness Durphy testified: "The words 'Pearsall deal' refer to the Little River and Maple Creek tract of land." The witness Wandesforde's testimony is similar.

The complaint, after setting forth the contract,—the genuineness and due execution of which are admitted,—alleges that

the plaintiff has duly performed all the conditions of said
contract to be performed by him, and that the sale of the
lands mentioned in said contract has been duly consummated,
and that the defendant has not paid the plaintiff the sum of
seventy-five hundred dollars or any part thereof. The only
issues presented by the pleadings to be passed upon by the
jury were,—1. Whether the plaintiff had performed the con-
ditions of this contract,—and there seems to be no question
as to that; and 2. Whether the sale of the land mentioned in
the contract had been consummated. In the oral argument
on behalf of the appellant, counsel says: ''It appears that
nearly two years after the original contract was entered into,
the defendant did effect a sale of the lands to parties other
than B. F. Durphy. This fact appears from a contract of
sale in writing, entered into between Pearsall and one Henry,''
and counsel complains that this evidence was introduced
against the objection of the appellant. It being an issue to be
proved whether the sale had been consummated, it was proper
for the plaintiff to introduce any competent evidence to sup-
port that issue on his behalf, and it makes no difference
whether the evidence was obtained from the defendant or
from any other party. The evidence shows that the plaintiff
did fully perform the contract on his part to be performed,
and that he has not been paid for his services according to
the contract is quite evident from the protracted contest on
the part of the defendant to resist such payment.

Defendant's motion for a nonsuit under the circumstances
was properly denied.

As already stated, the court did not err in permitting the
plaintiff over defendant's objection to offer in evidence the
contract bearing date August 21, 1900, between the defendant
and J. E. Henry & Sons. The purpose of the evidence was
in support of the allegation of the complaint, which was
denied by the defendant, that the sale of the lands mentioned
in the contract sued upon had been duly consummated.

Appellant takes exception to a portion of the instruction
given at the request of the plaintiff as follows: ''That a sale
of said lands was either made to B. F. Durphy or to the per-
son suggested by or through him, or, if not made to such a
person, that it was understood and agreed between the parties
that the plaintiff should receive such compensation, no matter

to whom such lands should be sold.'' Appellant claims that there is no evidence to warrant such an instruction. By the terms of the written contract sued upon the plaintiff is entitled to his compensation ''when the sale is consummated,'' and, as already stated, the limitation in the former contract is entirely omitted. The only objection that can be made to the portion of the instruction complained of is, that it submitted to the jury the question that was proper for the court to determine as matter of law,—to wit, the interpretation or meaning of the written contract sued upon. (Code Civ. Proc., sec. 1858.) It is not apparent, however, that the action of the court in this respect could have prejudiced the defendant.

The appellant further assigns as error the refusal of the court to give defendant's instruction No. 6, but the court did give defendant's instruction No. 5, as modified, in the following language: ''If a party to a contract breaks it and fails thereby or refuses to carry out its terms, the other party may treat the contract as at an end, and the party causing a breach thereof cannot maintain an action thereon against the other party, therefore I instruct that if you find from the evidence that the plaintiff under the contract set forth in his complaint was to render certain services to the defendant in the sale of the tract of land mentioned in the said complaint and which consisted in part of securing deeds of said land to be made in the name of the said defendant and placed in escrow to be delivered to him upon the payment of the price of the land conveyed thereby, and if you further find that after the execution of the said contract the said plaintiff without the consent of the defendant abandoned the contract between them and in pursuance of such abandonment went to different owners of said land and induced them not to leave their deeds in the defendant's name but to make new deeds in favor of one H. W. Wandesforde, and in pursuance of which and for the purpose of preventing the said defendant from consummating such sale deeds to said land were so made in favor of the said Wandesforde, then I instruct you that the said plaintiff cannot recover in this action, and your verdict should be for the defendant.'' This instruction as given substantially covers the ground embraced in the sixth instruction, and therefore the refusal to give it was harmless, and the same may be

said of defendant's instruction No. 7, given by the court as modified.

The main ground on which the motion for a new trial was based was the alleged insufficiency of the evidence to justify the verdict.

"The granting or denying a new trial on the ground that the evidence is insufficient to justify the verdict, where there is a substantial conflict in the evidence, rests so fully in the discretion of the trial court, that its action is conclusive upon this court, unless it appears that there has been an abuse of such discretion." (*Domico* v. *Casassa,* 101 Cal. 413.)

The judgment and order apealed from are affirmed.

SHAW, J., concurring.—I concur in the judgment. The contract of December 29, 1899, provided that the plaintiff should receive seventy-five hundred dollars for his services in "the sale of the tract of land on Little River and Maple Creek, known as the 'Pearsall deal,'" and that the money should become due when the sale was consummated. The complaint avers that the sale had been consummated before the action was begun. The answer denies this allegation. It, therefore, became a material issue in the case whether or not the sale referred to in the agreement had been consummated at the time the action was begun. The above-quoted clause is ambiguous, and for this reason it was competent to introduce parol evidence of the circumstances under which the agreement was executed for the purpose of determining therefrom what was meant by the phrase "Pearsall deal." Upon this question the evidence was conflicting. The theory of the plaintiff was, and there was evidence in support of it, that prior to the execution of either of the contracts referred to the plaintiff and the defendant, with others, were engaged in the enterprise of obtaining options from a large number of owners of small tracts of timber land for the purpose of obtaining control of a large body of such land, and making a sale thereof to some third person, and that this particular enterprise was what was known as the "Pearsall deal," and that in the light of this testimony the sale of the tract known as the "Pearsall deal," mentioned in the contract sued on, meant any sale of the particular tract which was then under the control of the parties to any person. The theory of the

defendants, on the other hand, was, that at the time the contract of December 29th was executed the only deal in contemplation between the parties, and the one referred to in the contract sued on, was the sale to B. F. Durphy of the particular tract of land upon which they had previously obtained options, being the sale referred to in the agreement of March 17, 1899, set forth in the opinion of Mr. Justice Van Dyke, and that as this sale had never been consummated the plaintiff was entitled to no compensation. It was a question for the jury to determine which of these two interpretations of the ambiguous phrase of the contract was the real expression of the intention of the parties.

Upon this point the court instructed the jury that the contract could be explained by reference to the circumstances under which it was made, and the matter to which it relates, in case the intention could not be ascertained from the writing alone, and that if they found that it was understood by the contract that the plaintiff should have no claim against the defendant for services in the sale of the land unless the same should be sold to Durphy or his agent, or some person suggested by him, and that the sale was not made to such person, then they should find for the defendant; but that if they found that it was the intention of the parties that plaintiff should receive the compensation specified, no matter to whom the lands should be sold, and that thereafter the defendant sold the land to third persons, then the verdict should be for the plaintiff for the sum sued for. This is undoubtedly correct, and the only criticism to be made is, that it directs the jury more to the ultimate conclusion to be reached by it than to the particular facts which it should find in order to arrive at the conclusion. It would have been better, for instance, if the court had instructed the jury to ascertain from the circumstances the meaning of the phrase "Pearsall deal" as used in the contract sued on, and that if they found it was meant by the parties to refer to the particular sale of the land to Durphy or his agent, or to some one suggested by him, as provided in the previous agreement of March 17, 1899, and that such sale had not been made, then they should find for the defendant; but that if they found that the parties customarily used the phrase "Pearsall deal" not to designate any particular sale of lands, but to designate a particular

tract or aggregation of tracts of land, upon which they had procured options for the purpose of making a sale thereof in one body to any purchaser who could be found at a satisfactory price, and that it was used in this sense in the contract sued on, and that thereafter a sale of said lands had been made by the defendant, then the plaintiff should recover.

But the instructions given were in substance to the same effect, and I do not think they could have been misleading to the jury. There was evidence sufficient to sustain the verdict upon the theory contended for by the plaintiff.

Angellotti, J., concurred with Shaw, J.

Hearing in Bank denied.