[Civ. No. 233.    Second Appellate District.—May 31, 1906.]

LYMAN NEWTON, Appellant, v. UNITED ELECTRIC, GAS AND POWER COMPANY, Respondent.

ACTION FOR NEGLIGENCE—ORDER GRANTING NEW TRIAL—DISCRETION—REVIEW ON APPEAL—AFFIRMANCE OF ORDER.—An order granting a new trial after verdict for the plaintiff in an action for negligence, on the ground of insufficiency of the evidence to justify the verdict on the question of negligence, and that it was against law in that respect, will be affirmed, where no error or abuse of discretion appears in the record.

ID.—NEGLIGENCE OF ELECTRIC COMPANY—EXPERT EVIDENCE—DISCUSSION IN OPINION OF JUDGE.—Where the negligence of an electric power company was involved, and it appears that expert evidence on the question of its negligence was introduced on both sides, it is not to be assumed that the discussion of that question in the opinion of the judge was that of an electrical expert, and not a judicial opinion, where there is nothing to indicate that the opinion was not based upon the expert evidence so introduced.

APPEAL from an order of the Superior Court of Los Angeles County granting a new trial.    D. K. Trask, Judge.

The facts are stated in the opinion of the court.

Edwin A. Meserve, A. S. Longley, and J. P. Chandler, for Appellant.

Cochran, Williams & Phillips, and Hunsaker & Britt, for Respondent.

SMITH, J.—The following is the opinion of the trial judge referred to in the decision of the court:

"In this case the facts are briefly these: Defendant maintains a transformer, which is attached to cross-beams. The cross-beams are fastened to piers under the approach to the Long Beach wharf and pavilion. The transformer and cross-beams are about fourteen feet from the ground. From the shore side, two wires run to the transformer carrying a large voltage of electricity. Two wires run from the transformer, carrying a much lower voltage, to supply lights for the wharf and pavilion. At the time of the injury complained of, the plaintiff was employed by the city of Long Beach to sweep the wharf and pavilion and perform other duties in line with such work. Early in the morning of the accident, plaintiff's attention was attracted to the fact that smoke was coming from one of the cross-beams. Plaintiff thereupon placed some boxes alongside of a small shack standing near, and by the aid of these boxes climbed upon the flat roof of the shack. A woman, who had attracted plaintiff's attention to the smoking cross-beam, passed him a small bucket of water which he threw at or upon the beam. Thereupon plaintiff fell or was thrown from the shack to the ground. He was soon found in a partially unconscious condition. An examination, made soon afterward, showed a loss of skin upon the backs of his hands and an injury to his back. One of the issues was whether these wounds were bruises caused by his fall from the shack to a board walk or whether they were electric burns. The plaintiff's theory of the case is that when he threw the water upon the cross-beam, a circuit was formed thereby, through the agency of the water, electricity then escaping at the cross-beam, was conducted to the plaintiff and through him and the shack to the ground. It was a wooden shack, and it is hardly supposable, though admitting this to have been a damp, foggy morning, that the

wooden shack could have been a sufficiently good conductor of electricity to have completed the circuit so that plaintiff could have been shocked, even if it be assumed that the electricity would leave the cross-beam and travel to plaintiff through the medium of a column of water or through the air saturated with water the distance from him to the beam. But plaintiff testified that as he was climbing up, he received quite a severe electric shock when he first put his hand upon the shack. If this is true, it would seem that the shack was not 'grounded,' for, had it been 'grounded,' there could have been in it no accumulation of static electricity from a leakage of the service wires that ran into it. And if it was not 'grounded,' plaintiff, when standing upon it, could not have received through his body a current from the cross-beam either by the agency of the water or otherwise. But it seems quite improbable that the electricity would leave the cross-beam to take a path afforded by such a poor conductor as a column of water, even if it be conceded that, for an instant, there was a continuous column of water from the bucket to the cross-beam, which is also improbable. And it seems still more improbable that the electricity would travel to plaintiff through a column of aqueous atmosphere, created by the agency of the water thrown toward the beam. The injuries found upon the plaintiff's body are as well explained as bruises suffered in consequence of his fall as electric burns.

"Further, assuming that defendant was negligent in not properly insulating its wires, it is a grave question whether it can be said, as a legal proposition, that plaintiff's injuries (if he was injured in consequence of an electric shock) were a natural and probable consequence of defendant's negligence.

"Barrows on Negligence, at page 13, says: 'The tendency of the courts would seem to be that, negligence being established, the person guilty of it is liable for its consequences, whether they be such as he could or ought to have foreseen or not.' It has been held that one negligently causing a fire is liable only for damages or injuries caused by the fire, and that he is not liable for personal injuries received by persons in voluntarily attempting to extinguish the fire. As to this matter the cases of *Liming* v. *Illinois Cent. R. Co.,* 81 Iowa,

246, [47 N. W. 66], and *Pike* v. *Grand Trunk Ry. Co.,* 39 Fed. 255, may be cited as illustrating the conflicting views of the courts. But while courts have differed as to what are 'natural and probable' consequences of negligence in given cases, the principle that consequences of negligence to be actionable must be 'natural and probable' has not been denied. In this case, while the evidence may justify the conclusion that it is possible that plaintiff received an electric shock, it falls far short of showing a probability of such result under like circumstances. And a remotely possible consequence resulting through the agency of an unusual and peculiar set of co-operating circumstances fails to satisfy the requirements of a definition of a natural and probable consequence. · In this case, the wires were suspended fourteen feet from the ground, and were securely fastened. There was no apparent danger of anyone coming in contact with them in their position high above the ground and several feet below the plank walk overhead. There was no negligence in placing or securing these wires in their place. And as the only explanation of the very slight charring of the cross-beam, on the morning of the accident, is to be found in the fact that one of the insulators, on this beam, was broken, I think it should be held that plaintiff's injuries (conceding them to have resulted because of an electric shock) are not a natural and probable consequence of the breaking of this insulator. And I so hold, not upon the theory that in attempting to extinguish what he believed to be an incipient fire, plaintiff acted as a mere volunteer, but upon the theory that it was his right and duty to extinguish any fire that he believed might spread and injure or destroy the wharf and pavilion. And I do not find that plaintiff was guilty of any contributory negligence. (Shearman and Redfield on Negligence, sec. 679.)

"But I do not think the evidence shows that defendant was negligent. The only substantial fact in the case upon which to predicate negligence is the fact that an insulator upon this cross-beam was broken. There is no satisfactory evidence showing when or how this insulator broke, nor any act or omission of defendant whereby it was broken or maintained for any time in a broken condition. There is no satisfactory evidence to show that defendant did or failed to do anything

whereby it was remiss in its duty.   And unless it can be held that the fact of the breaking of an insulator is itself proof of negligence, no negligence has been established in this case. On the other hand, the evidence introduced by defendant tends to show that it exercised all necessary and usual precautions.

"The defendant's motion for a new trial is granted on the ground of the insufficiency of the evidence to justify the verdict, and on the ground that the verdict is against law; and as to all other grounds, the motion is denied.

"D. K. TRASK,

"Judge."

This appeal is from an order granting the motion of the defendant for a new trial.   The case is stated and the grounds for granting the order appear in the opinion of the judge of the lower court, which will be found in the statement of the case.

We find nothing in the record to exclude the case from the established rule that the appellate court will not set aside an order of the trial court in granting or refusing a new trial unless it appears that it was erroneous, or that there has been an abuse of discretion.   (*Domico* v. *Casassa,* 101 Cal. 411, [35 Pac. 1024]; *Cutten* v. *Pearsall,* 146 Cal. 697, [81 Pac. 25].)

The point chiefly urged by the appellant is, that the opinion of the court "is the opinion of the judge as an electrical expert, and not a judicial opinion."   But assuming, for the purposes of the decision only, that we may look to the opinion of the judge as constituting the exclusive grounds of his decision, yet it is admitted that there was expert evidence on both sides of the question involved, and there is nothing in the opinion to indicate that the judge's decision was not based upon the expert evidence given *pro* and *con.*

The order appealed from is affirmed.

Allen, J., and Gray, P. J., concurred.