THE STATE v. PORTER.

| 34 | 131 |
| 94 | 649 |
| 94 | 705 |
| 34 | 131 |
| 104 | 726 |
| 34 | 131 |
| 114 | 55 |
| 34 | 131 |
| 117 | 225 |
| 34 | 131 |
| 120 | 568 |
| 34 | 131 |
| 125 | 639 |
| 125 | 747 |
| 34 | 131 |
| f132 | 479 |

1. **Criminal law: CONFINEMENT OF PRISONER.** A prisoner, after being indicted for murder, may properly be ordered to be confined in the State penitentiary for safe keeping before trial, instead of in the county jail.

2. **Evidence: FACTS AFFECTING WEIGHT OF.** Facts affecting merely the weight of testimony constitute no objection to its admission.

3. —— **CRIMINAL LAW: MEDICAL EXPERTS.** The opinions of medical experts as to the character of instrument producing a wound, its probable effect and consequences, are admissible in a prosecution for murder.

4. **Criminal law: REASONABLE DOUBT.** The rule that the State in a criminal prosecution must, in order to convict the prisoner, establish his guilt beyond a reasonable doubt, or to the exclusion of every other hypothesis, is limited to cases where the doubt or hypothesis arise out of the evidence introduced, and does not extend to facts which may possibly exist, and of which there is no proof.

5. **Evidence: CROSS-EXAMINATION.** While for the purpose of eliciting truth great latitude should be allowed in cross-examination, its extent rests somewhat in the sound discretion of the court.

6. —— **CRIMINAL LAW: OPINIONS.** Where in a prosecution for murder, in which the defense of insanity was set up, a witness stated, in answer to a question by defendant's counsel, that defendant " never was just right," it was held proper for the State to ask the witness whether, in his opinion, the defendant was not intelligent enough to know right from wrong.

7. —— **RES GESTÆ: DECLARATIONS.** In such prosecution, a witness on the part of the State testified that, on approaching the house of the deceased, he saw the prisoner at the door brandishing a chair and calling for some one to " come on." He further testified, that, on entering the house, the deceased jumped from the chair in which he was sitting and exclaimed, " Now, we'll see whether I am to be knocked down with a chair in my own house." *Held,* that evidence of such declaration was admissible as forming a part of the *res gestæ.*

8. **Criminal law: SELF-DEFENSE: ONUS.** In a prosecution for murder, wherein the plea of self-defense was relied upon, the court, after instructing the jury that if they found that the prisoner killed the deceased in self-defense, they should acquit, further charged: " If, however, you find that the defendant inflicted the blow upon the deceased that caused his death, then the burden of proof is upon the defendant to show that he did it in self-defense." *Held,* that the instruction was erroneous, on the ground that, in effect, it required

the defendant to establish, by a preponderance of evidence, that he acted in self-defense, and excluded him from the benefit of an acquittal, if, under the facts shown, there existed a reasonable doubt that his act was willful.

*Appeal from Madison District Court.*

FRIDAY, MARCH 29.

THE defendant was indicted for the murder of his father, John Porter. At the August term, 1869, of the Madison district court, he was tried, found guilty of murder in the second degree, and sentenced to imprisonment in the penitentiary for twenty years. Defendant appeals. The necessary facts are stated in the opinion.

*John Leonard* for the appellant.

*Henry O'Connor*, attorney-general, for the State.

DAY, J. — The printed abstract comprises over five hundred pages. Upon the return of the verdict the defendant filed a motion for a new trial, embracing fourteen grounds. This being overruled he filed his motion in arrest of judgment, including thirteen grounds. The references in appellant's argument are to the written transcript, and not to the printed abstract. We have thus been needlessly embarrassed in our consideration of the case. The objections urged are so numerous that, in order to bring the opinion within reasonable space, it is necessary to group many of them together, and to consider them all but briefly.

I. The defendant, having been indicted, was remanded to the penitentiary at Fort Madison, for safe keeping,

1. CRIMINAL LAW: confinement of prisoner. until the time of trial. It is claimed that this act was in contravention of the spirit of our law, and of the right of the defendant to a speedy trial, and that the defendant was thus placed beyond the reach of his counsel, and deprived of the means of making preparation for his defense. It does not, however,

appear that the order was, under the circumstances unnecessary, nor that the defendant was in any way prejudiced thereby.

II. Objection is made to the entire testimony of Drs. S. B. Cherry and L. M. Tedrick, because one of them confessed, " I don't think we did our duty; I don't think we made sufficient examination ; " and the other admitted, " That it might probably be true that he went to examine the body for the purpose of finding evidence that the deceased had been killed, and not for the purpose of ascertaining whether there was any evidence of any other cause of death to be found on the body." These admissions, drawn out on cross-examination, affect not the competency, but the weight of their testimony, and are to be considered by the jury and not by the court. It is further objected that these witnesses introduced their statements with such expressions as " I think," " I took it," " We concluded," " We inferred," " We supposed," and like expressions, and that their statements thus brought out were allowed all the effect of proof. This, also, is a consideration for the jury. There is no rule of law which requires a witness to be absolutely positive in his statement of fact. The positive witness is often entitled to less consideration than the more cautious. The rule excluding secondary evidence is not applicable to this consideration.

III. The physicians were asked the following questions : " Could you tell the jury, from your examination, where that blood must have come from ? " " I will ask you whether a strong blow from a chair could have produced an appearance similar to that which you noticed on the neck of John Porter, for example ? " " How long could a person have lived after sufficient external force was applied to produce these conditions ? " " I will ask you to state, doctor, from your examination of the old man's body, what, in your opinion, caused his death, whether internal disease or external violence ? "

These witnesses were introduced as experts, and hence all the above questions were proper. The opinions of medical men, who are shown to be experts, as to the instruments producing, and the nature and consequence of wounds, or the causes of diseases, are competent evidence in a prosecution for homicide. *State* v. *Morphy*, 33 Iowa, 270. The fact that, upon cross-examination, it appeared that the examination of deceased was not as thorough as it might have been, does not affect the competency of their testimony. Dr. Cherry having stated that there might have been an aneurism sufficient to produce death; that they did not examine the lower portions of the body at all, and that it would have been impossible to have discovered an aneurism without an examination of the blood vessels, was asked by the State the following question : " State what was the reason you made no more extensive examination than you did ? " Ans. " The reason we did not pursue our investigations further was, that we thought we had discovered . sufficient cause to produce death." There was no error in admitting this testimony. Having discovered a cause sufficient to produce death, there existed no legal necessity that they should dissect the entire body and examine all the blood vessels, for the purpose of discovering whether an aneurism existed, causing a rupture of any of them. And, having failed to make such dissection, we know of no reason why they should not be allowed to state the cause which induced them to forego such examination. True, if they had made such examination and been able to state that no other cause existed to which the death could be attributed, their evidence would have been more satisfactory and convincing. And a desire to give intelligent testimony in a trial involving no less than the life of the accused, should lead every physician to prosecute his investigations as far as the circumstances render possible. Yet, when this is not done,

it is not improper to state the reason for the failure.    The sufficiency of the reason is to be weighed by the jury.

IV. Dr. Tedrick having testified that there was nothing in the appearance of the cavity of the skull, and in the external appearance on the side of the neck of the deceased, absolutely forbidding the idea that he might have died from apoplexy, except the ecchymosed appearance on the surface of the neck, and that he did not see how apoplexy could have produced that, was asked the following question by the defense: "Would it not have had that appearance if a man had had an attack of apoplexy, and had fallen on that side of his head and neck?" This was rejected, upon the ground that it was based upon an hypothesis shown by the evidence not to exist.

*4. —— criminal law: reasonable doubt.*

It is claimed by appellant that, in criminal cases, the prosecution must adduce such evidence as will exclude every other hypothesis but that of the guilt of the accused. Citing Greenleaf on Evidence, § 13 a. If this, without qualification, were to be admitted to be the rule, which we doubt, yet the hypothesis must arise out of the evidence adduced, and not out of facts which, by possibility, may exist, and of which there is no proof.

V. The witness Tedrick, testifying with reference to the dark spot on the neck, stated that he did not suppose that any one could tell whether the injury that occasioned it had been inflicted before or after death; that it might have been done a minute before, or a minute after, or a few minutes after.

*5. EVIDENCE: cross-examination.*

He was then asked "if the books lay down the extent of the time within which this external force may be applied, and produce these spots." This question was excluded by the court.

The witness was subjected to a rigid, searching and minute cross-examination, occupying thirty pages of the

printed record. While the greatest latitude should be allowed in cross-examination, so long as it tends to the eliciting of truth, and the furnishing of the jury with data upon which to base an intelligent finding, yet it must rest somewhat in the sound discretion of the trial court. And when there seems to have been no abuse of discretion, and no substantial prejudice has resulted, this court will not interfere. It is claimed that this witness had based his opinions upon the statements of the books, and that this question was proper in order to a subsequent introduction of the books, to show that the witness did not know what the books taught. But the books could have been introduced for that purpose, just as well without asking this question. While, therefore, the court might, with propriety, have admitted the question, there was no error in rejecting it.

VI. The defendant relied upon insanity as a defense. James Porter, the brother of defendant, was introduced, 6. CRIMINAL and testified to various declarations of the LAW: opinions. deceased, and of defendant's mother who was also dead, touching the mental condition of the defendant. The defense then asked the following question: "You may now state any thing that you may have ever heard any other members of the family say, in relation to Henry's mental condition? The question being objected to, the defendant's attorney, in response to a question by the court stated, that the other members of the family were all living, and residing in Madison county, except a sister who lived in Indiana. Thereupon the court excluded the question. We are aware of no rule of law rendering the question proper.

The declarations are connected with no act of which they constitute part of the *res gestœ*. The declarants are living and competent witnesses.

The question in issue is not one of pedigree, and if governed by the same rules governing questions of pedi-

gree, the declarations of persons living are inadmissible. 1 Greenl. on Ev., § 103.

VII. Certain witnesses, having testified as to the mental condition of defendant, were permitted, against his objection, to answer the following question: "I will ask you whether, in your opinion, Henry, the defendant, has not sense enough to know right from wrong?" The witnesses were not experts, but had detailed fully the facts upon which their opinions were based, and had stated, in answer to a question by the defense as to the mental condition of defendant, "that he never was just right." Having given an opinion as to defendant's lack of mental power, it was proper, it seems to us, to ascertain from them, upon cross-examination, the degree of imbecility. It is objected, however, that the ability to distinguish right from wrong does not furnish the proper test of criminal responsibility. This may or may not be true. If the insanity consists in a want of intellectual power, this rule furnishes the test. If the insanity consists in an uncontrollable impulse, overcoming the will, and impelling one to do an act known to be wrong, it may not furnish the proper test. The testimony, however, is proper, inasmuch as it furnishes a rule which may apply to the case.

In re-examination, one of these witnesses was asked to state whether he had ever seen the defendant angry, and what was his appearance then? This was rejected. With respect to this it is sufficient to say, that the same witness upon direct examination stated that he had seen defendant angry, and detailed his appearance. There was no error in refusing to hear the testimony repeated.

VIII. The testimony disclosed the following facts: At the time of the alleged homicide, Calvin Hunt was

7. —— res gestæ: declarations.

approaching deceased's house, and when he reached the top of a hill, about one hundred yards from the house, he heard a fuss there, and the deceased telling some one to go out of the house and stay out,

and not come in any more. When witness came within thirty or forty yards of the house, he saw the defendant come to the back door, with a chair drawn up in his hands, and heard him say, " Oh, come on ! " Just then Lydia Porter came up and said, " What is all this fuss about here ? " Defendant said, " The old man is trying to drive me off of the place." The defendant stepped around the west end of the house, and Lydia went in. Hunt, all this time approaching the house, went in and found the deceased sitting before the fire, with his hands across his knees. He jumped out of his chair and said, " Now, we'll see whether I am to be knocked down with a chair in my own house." He stepped to the back part of the room, sat down in a chair by the foot of the bed, and said, " I am hurt ; I am bad hurt ; yes, near about killed." He then said, " Lord, have mercy on me ; I am dying." He sprang from the chair, and reeled and staggered toward the door. Lydia caught him by the arm. He again sat down in the chair, threw up his arms, threw his head back on the bed, and died. Defendant assigns as error the declaration of the deceased, " Now, we'll see whether I am to be knocked down with a chair in my own house." This testimony occupies a position so near the line dividing the competent from the incompetent, that the question of its admissibility is not altogether free from difficulty ; yet, we believe it was properly allowed. " Surrounding circumstances, constituting parts of the *res gestœ*, may always be shown to the jury along with the principal fact ; and their admissibility is determined by the judge according to the degree of their relation to that fact, and in the exercise of a sound discretion ; it being extremely difficult, if not impossible, to bring this class of cases within the limits of a more particular description. The principal points of attention are, whether the circumstances and declarations offered in proof were contemporaneous with the main fact under consideration, and whether they were so connected with it as to illustrate its character."

The State v. Porter.

1 Greenl. on Ev., § 108, and cases cited. The defendant had just passed from the house with a chair in his hand, challenging deceased to come on as Lydia Porter and witness entered the house. The affray, of whatever nature, had just transpired. Upon the instant of the witness entering, the deceased jumped from his chair, and made the declaration objected to. The declaration itself is in no sense a history of the past occurrence. It is the natural and spontaneous expression of a feeling of security, now that a neighbor has arrived from whom he expects protection. That he leaped from his chair, as the witness entered, is clearly admissible as an act, constituting part of the entire transaction. His declaration at the time, "Now, we'll see whether I am to be knocked down with a chair in my own house," is also an act, a verbal act, expressive of his hopes and feelings.

IX. Thirty-nine instructions were asked by the defendant, all of which were refused. The court, upon its own

8. CRIMINAL LAW: self-defense: onus.

motion, gave thirty-three, only eighteen of which appear in the record. Many of the instructions asked by the defendant are substantially embraced in those given by the court. To consider each one separately would occupy a space entirely disproportioned to the advantages which would result. The charge of the court in its main features is correct.

We notice specially instruction twenty-four, which is as follows: "If you find from the evidence that the defendant killed or caused the death of the said John Porter, and if you further find that he was acting in self-defense in so doing, it will be your duty to acquit him; or if you find that John Porter attacked the defendant, and that the defendant only used such force as was necessary to repel the assault, he would not be guilty as charged, even if death did result therefrom. If, however, you find that the defendant inflicted the blow upon the deceased that caused

his death, then the burden of proof is upon the defendant to show that he did it in self-defense."

This instruction is clearly erroneous. Proof is the result of evidence. No fact can legally be said to be proved, unless it is established by at least a preponderance of evidence. The party upon whom rests the burden of proof, must establish the fact respecting which the burden is cast upon him, by at least a preponderance of evidence.

Whether or not a homicide is committed in self-defense depends upon the circumstances under which the act is done. And these circumstances, whether introduced by the State, in making out the case in chief, or by the defendant in support of his defense, constitute part of the *res gestæ*. If they do not, they are not admissible in evidence. And, however the circumstances are introduced, the rule of law is, that the jury, after weighing them all, must be satisfied of the defendant's guilt beyond a reasonable doubt, or they must acquit. Under the rule laid down, the defendant must establish, by a preponderance of evidence, that he acted in self-defense, or the jury would be required to find him guilty ; whereas he is entitled to an acquittal if he shows, by the facts attending the commission of the offense, proved either by himself or the State, that there is reasonable doubt that his act was willful. The rule is different when the matter of defense is wholly disconnected from the body of the offense. *Tweedy* v. *The State*, 5 Iowa, 434, and cases cited ; *The State* v. *Morphy*, 33 id. 270 ; *The State* v. *Felter*, 32 id. 49.

There was no eye witness of the homicide in question. The defendant was seen coming from deceased's house, brandishing a chair, and was heard calling upon deceased to come on. The deceased was heard telling him to go out of the house and stay out. Defendant said : " The old man is trying to drive me off of the place." Immediately thereafter the deceased was found sitting by the fireplace apparently very angry. Other circumstances

were introduced showing the violent temper of deceased, and previous difficulties between him and the defendant. It was due the defendant that the cause should be submitted to the jury with proper instructions as to every reasonable phase of the case. For the error in the instruction above named the cause is reversed, and remanded for a new trial.

Reversed.