[Civ. No. 259.   Second Appellate District.—October 18, 1906.]

NELLIE L. ALLEN, Respondent, v. W. S. BRYANT and Wife, Appellants.

QUIETING TITLE—DEFENSE OF FRAUD—JOINT RELATIONS OF PARTIES—APPEAL—PROOF EQUIVALENT TO FINDING.—Upon appeal from a judgment quieting plaintiff's title, where the answer pleads that the title was procured by plaintiff's donor from the defendant by fraud and undue influence, and alleged that, prior to the deed so procured, defendant owned the whole title, and had conveyed one-half to plaintiff's donor, to be operated, subdivided and sold on their joint account, and for their joint benefit and profit, where such allegation was proved without conflict, the failure to find upon it is, for the purpose of the appeal, to be regarded as equivalent to an affirmative finding as to the joint relations of the parties.

ID.—FINDINGS AGAINST EVIDENCE—UNDUE INFLUENCE—UNFAIR ADVANTAGE OF JOINT RELATIONS—MISTAKE KNOWN TO GRANTEE.—Held, that the findings for the plaintiff are against the evidence, which establishes that the remaining half of defendant's title was procured by undue influence exercised over defendant by plaintiff's donor, in taking unfair advantage of the joint relations between them; that one-half of the consideration paid was in fact the property of defendant; and that the mistake of the defendant as to the indebtedness between them, and as to the true nature of the consideration, was known to the grantee.

APPEAL from a judgment of the Superior Court of Los Angeles County.   N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

Walpole Woods, and Jesse F. Waterman, for Appellants.

Bicknell, Gibson, Trask, Dunn & Crutcher, for Respondent.

SMITH, J.—Appeal from a judgment for the plaintiff, on the judgment-roll, with bill of exceptions.   The suit was brought to quiet the plaintiff's title to an undivided one-half of the tract of land described in the complaint and referred to in the answer as the "Cherrioto Ranch."

The plaintiff derived her title to an undivided one-half of the land in question under a deed of gift from her husband,

Charles Allen, to whom it had been conveyed by the defendants by deed of date July 22, 1904. The defense is that this deed was fraudulently obtained under the circumstances set up in the answer.

The case as presented by the pleadings, findings and stipulations of the parties is as follows:

1. The tract described in the complaint was purchased by Bryant from one Cherrioto, who conveyed the same to him by deed of date January 9, 1904, subject to a mortgage executed by him and his wife to secure the purchase money thereon, amounting to the sum of $22,500, with interest. There were some other instruments subsequently executed to correct mistakes or supposed mistakes in the deed and mortgage; but these need not be regarded.

2. At this time Bryant and Allen were associated together in the business of subdividing and selling a tract of land known as the "Pardee Tract" under an agreement entered into by them of date December 14, 1903. This tract belonged to Bryant, and by the terms of the contract, Allen was to have charge of the subdivision and sale of the tract; and the proceeds of the sales of lots, after payment of the expenses and amounts due thereon to Bryant, were to be equally divided between the two parties.

3. This being the relation of the parties, Bryant and Allen, it is alleged in the answer, entered into another contract that Bryant should convey to Allen an undivided one-half of the Cherrioto ranch, subject to the mortgage —to be operated and ultimately subdivided and sold on joint account and for the joint benefit and profit. There is no finding on this allegation, but its truth is established, without contradiction, by the evidence, and the effect of the failure to find upon it is, for the purposes of this appeal, to be regarded as equivalent to an affirmative finding.

4. Accordingly, by deed of date January 16, 1904, the Bryants conveyed to Allen an undivided one-half of the ranch, subject to the mortgage.

5. Thereafter, by deed of July 22, 1904, which is the deed in controversy, Bryant conveyed to Allen the remaining undivided one-half of the property. The consideration stated in this deed does not appear; but it is alleged in the answer, and it appears from the evidence of Bryant, which is uncontradicted, that the consideration was Allen's note for $1,500

and the sum of $989.97, claimed to be due to him from Bryant on account of the ranch. On this allegation there is no explicit finding; but it is found that the consideration of the deed, and of a transfer of ''certain personalty'' to Allen was ''a release of all indebtedness to him, being a balance due said Allen on account of moneys laid out and expended on and in connection with said real property, under an agreement between said Allen and the said . . . Bryant,'' and a promissory note given by Allen to Bryant for the sum of $1,500, payable with interest at six per cent per annum four years after its date. And it is further found that Allen afterward satisfied the note ''by paying and delivering to the said . . . Bryant one hundred tons of hay at fifteen dollars per ton.''

In explanation of this finding, it is to be observed that at the time of the conveyance Allen rendered to Bryant a statement of the account of their affairs, including the operation of the Cherrioto ranch and the Pardee tract and some personal matters, to which there was attached the following on a slip pinned to the statement: ''The item of $989.97 is this day settled as part of the consideration for the purchase of Mr. Bryant's interest in said ranch. Charles W. Allen.'' This account, omitting the items, is as follows:

''Paid out Acct. Cherrioto Ranch.

| ''By Charles W. Allen. | | By W. S. Bryant. |
|---|---|---|
| * * * * * * | | |
| ''Total, | 1,353.57 | 363.60 |
| ''Pardee Tract. | | |
| * * * * * * * * * * | | |
| ''Totals, | 3,188.00 | 3,488.95 |

''Balance due Allen, $300.95.

''Advancements made W. S. Bryant.

| * * * * * * | | |
|---|---|---|
| ''Total, | 211.88 | |
| ''Due Allen, | Sum totals. | |
| from ranch | $989.97 | |
| '' Pardee Tr. | 300.95 | |
| '' W. S. Bryant, | 211.88 | |
| | | |
| ''Total, | $1,502.80.'' | |

From this account it is apparent that the amount due from Bryant to Allen was one-half only of the $989.97 due "from ranch." But Bryant testifies that prior to the delivery of this statement Allen went over the books with him and told him (Bryant) that the amount of $989.97 was due from him to Allen, and then proposed to him "to deed him (Allen) another quarter interest in the Cherrioto ranch for it." From Bryant's evidence it also appears that Allen then offered to buy Bryant's one-half interest in the ranch and give him a receipt for the account, "nine hundred eighty-seven dollars and some cents, and two thousand dollars besides." Bryant, he says, was then proposing to sell his store, for which he had an offer pending, to pay this indebtedness; but being disappointed in the sale, he notified Allen that he would accept his offer. But Allen then refused to give more than $1,500, in addition to the amount due him, to which Bryant acceded.

It appears, therefore, if Bryant's statement was true, that the actual consideration was the $1,500 note and the sum of $989.97, claimed by Allen to be due to him from Bryant, but of which he was entitled to only one-half. On the other hand, if Bryant's testimony was false and the account was understood by him as it should have been, the consideration was the note and one-half of the $989.97. There was thus raised a very sharply defined and material issue; and upon this issue the finding of the court leaves us in doubt whether it was intended to negative the testimony of Bryant. If so, we are of the opinion, for reasons to be stated presently, that the finding would be in conflict with the evidence.

In some other particulars, also, the finding is clearly in conflict with the evidence. The court finds the transfer of "certain personalty" to Allen by Bryant, and that the note was satisfied by the payment and delivery to Bryant of one hundred tons of hay at $15 per ton. But on looking at the evidence we find that the only transaction of the kind was a bill of sale of July 15, 1904 (seven days before the execution of the deed) transferring to Allen Bryant's interest "in all hay now cut or that shall be cut this year on the ranch, . . . authorizing him to dispose of same to the best advantage he may be able; the intention being that he may repay himself for money expended in care of said ranch out of said hay, if possible."

The hay referred to as used in the payment of the note was the hay on the ranch covered by the bill of sale. Prior to the time of the supposed payment it had been baled by Allen, and from the ordinary course of the seasons and agriculture in the country, it may perhaps be assumed that it had been cut, if not baled, prior to the date of the deed and the date of the bill of sale. But however this may be, it had been transferred by Bryant to Allen prior to the date of the deed and thus became personalty in the hands of Allen upon the trusts specified. (*Davis* v. *McFarlane,* 37 Cal. 634, [99 Am. Dec. 340] ; *O'Brien* v. *Ballou,* 116 Cal. 318, [48 Pac. 130] ; *Bank of Woodland* v. *Herron,* 120 Cal. 614, 616, [52 Pac. 1006].) The hay, therefore, did not pass to Allen by the deed subsequently made to him. It appears, therefore, that one-half of the hay with which the note was satisfied was the property of Bryant, and that he in fact received only one-half of the amount due on the note.

But the significance of this transaction is much broader. It shows the helplessness of Bryant at that time in business matters, and the willingness and disposition of Allen to take advantage of his infirmity; and from this may be inferred a similar weakness on the part of Bryant and a similar disposition on the part of Allen at the time of the conveyance of the land—thus strongly confirming the testimony of Bryant as to his understanding of the matter. Nor independently of this confirmation do we see any reason to doubt Bryant's testimony in this regard. On the contrary, it is strongly confirmed by its consistent circumstantiality, and also by the slip attached to the account, which, though susceptible of a different construction, was more calculated to be understood by Bryant as asserting an indebtedness of the amount stated to Allen; thus confirming the impression previously received from Allen's representations.

6. It is also found that on or about the fifth day of August Allen sold and conveyed to one Funk an undivided one-half of the Cherrioto Ranch, subject to the mortgage, for the sum of $5,000, Funk agreeing to assume and pay one-half of the amount then due under the mortgage. But it appears from the record that the sale was made on the third day of August, just twelve days after the execution of the deed of Bryant to Allen. One of the facts set up in the answer as constituting the fraud complained of is that at the time of the

execution of the deed from Bryant to Allen, Allen was in negotiation for the sale of the ranch at a large profit; and from the evidence it fairly appears that this was the fact, and that the pendency of the negotiation was concealed from the defendant. But there is no direct finding on this point.

7. It is, however, found that Allen in none of his transactions with the defendants in relation to the said real property or personalty made any false or fraudulent representations or concealments whatsoever, or designed or intended to, or did, cheat said defendants, or either of them. But in view of the admitted facts and of the uncontradicted evidence and of the relations existing between the parties, we are of the opinion that this finding cannot be sustained. And on the whole, we are of the opinion: That the consent of the defendants in the deed from them to Allen was the result of a mistake as to the amount due to Allen; that this mistake was known to Allen—if not produced by his misrepresentations made with the view of obtaining the deed; and that the deed was obtained by undue influence. (Civ. Code, secs. 1565, 1567, subds. 3-5, 1575, 1577.)

For these reasons, we are of the opinion that the judgment should be reversed, and it is so ordered.

Gray, P. J., and Allen, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 14, 1906.