[L. A. No. 2227. Department Two.—March 1, 1909.]

## NELLIE L. ALLEN, Respondent, v. W. S. BRYANT et al., Appellants.

LAW OF THE CASE—EXTENT OF DOCTRINE.—The doctrine of the law of the case presupposes error in the enunciation of a principle of law applicable to the facts of a case under review by an appellate court, and its extension is not looked upon with favor. The doctrine is rarely and in a very limited class of cases applied to matters of evidence, as distinguished from rulings of law.

ID.—APPLICATION OF LAW OF CASE TO MATTERS OF EVIDENCE.—When the fact which is to be decided depends upon the credit to be given to the witnesses whose testimony is received, or the weight to which

their testimony is entitled, or the inferences of fact that are to be drawn from the evidence, the sufficiency of the evidence to justify the decision must be determined by the tribunal before which it is presented, and is not controlled by an opinion of the appellate court that similar evidence at a former trial of the cause was insufficient to justify a similar decision. And if, in the opinion which the appellate court renders, it assumes that the evidence sustains any fact, it is only the opinion of the court and not the finding of that fact.

ID.—STATEMENT OF EVIDENCE BY APPELLATE COURT.—If the appellate court in its opinion states the evidence in a cause, whether correctly or incorrectly, the statement in no manner controls the court below, and cannot prejudice the parties where a new trial is had. It is upon questions of law that the decision of the appellate court becomes the law of the case, and not upon questions of fact.

FRAUD—DEED FROM ONE PARTNER TO ANOTHER—FINDING NEGATIVING FRAUD—EVIDENCE.—In an action involving the determination of the question whether a deed from one partner to another of a part of the partnership property was induced by the fraudulent representations or concealments of the grantee, it is held, upon a review of the evidence, that the findings of the trial court to the effect that no such fraud accompanied the transfer were fully supported by the evidence.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

Waterman & Wood, and Smith, Miller & Phelps, for Appellants.

Gibson, Trask, Dunn & Crutcher, Edward E. Bacon, and Harris & Harris, for Respondent.

HENSHAW, J.—This is a second appeal in the above-entitled cause. The first was taken to the appellate court of the second appellate district, and the opinion of that court will be found in 4 Cal. App. 371, [88 Pac. 294]. Before the second trial defendants had filed a cross-complaint, which sought relief, charging upon the same matters of fraud that appeared in their answer. The cross-complaint does not materially modify or enlarge the issues joined under the complaint and answer. Appellants support their appeal upon

CLV Cal.—17

two propositions: 1. The law of the case; and 2. The insufficiency of the evidence to justify the decision of the court.

1. Upon the first proposition appellants' contention is that upon the former appeal the evidence then and there before the appellate court was reviewed and declared to be insufficient to sustain certain findings; that upon the same evidence the trial court again made the same findings, when in point of law it should have been controlled in its determination upon these matters by the utterances of the appellate court in discussing the evidence upon the former appeal. In this, appellants mistakenly seek unwarrantably to extend the doctrine of the law of the case. The doctrine of the law of the case presupposes error in the enunciation of a principle of law applicable to the facts of a case under review by an appellate tribunal. It presupposes error because, if the governing principle of law had been correctly declared, there would be no occasion for the invocation of the doctrine. The sole reason for the existence of the doctrine is that the court, having announced a rule of law applicable to a retrial of facts, both parties upon that retrial are assumed to have conformed to the rule and to have offered their evidence under it. Under these circumstances it would be a manifest injustice to either party to change the rule upon the second appeal. But, since the rule owes its very existence to error, it is not one whose extension is looked upon with favor. The ruling is adhered to in the single case where it arises, is not carried into other cases as a precedent, and the doctrine is rarely and in a very limited class of cases applied to matters of evidence, as distinguished from rulings at law. (*Wixson* v. *Devine*, 80 Cal. 385, [22 Pac. 224]; *Mattingly* v. *Pennie*, 105 Cal. 514, [45 Am. St. Rep. 87, 39 Pac. 200].) The narrow class of cases in which the doctrine will be held to apply to evidence and the rigid limitation upon the application of the doctrine, will be found well expressed in *Wallace* v. *Sisson*, 114 Cal. 42, [45 Pac. 1000]. It is there said: "But when the fact which is to be decided depends upon the credit to be given to the witnesses whose testimony is received, or the weight to which their testimony is entitled, or the inferences of fact that are to be drawn from the evidence, the sufficiency of the evidence to justify the decision must be determined by the tribunal before which it is presented, and is not controlled by

an opinion of the appellate court that similar evidence at a former trial of the cause was insufficient to justify a similar decision. . . . And if in the opinion which it renders it assumes that the evidence sustains any fact, it is only the opinion of the court and not the finding of that fact."

Respondent does not stand alone upon the inapplicability of the doctrine of the law of the case to the present controversy, well taken as that position is, but further insists that the doctrine may not be applied because the evidence upon the second trial is different from that presented upon the first, and the particulars in which it is different are pointed out. That it is different is not denied by the appellants. They assert merely that it is not different in any essential particular. But one of two things is certainly true. Either it is essentially different upon this appeal, or the court of appeals upon the earlier hearing made a grave mistake in its discussion, by overlooking evidence bearing strongly in favor of respondent. A consideration of this evidence will be apposite as directed to appellants' second contention—the insufficiency of it to sustain the decision—and will serve also to show the vice of attempting to extend the doctrine of the law of the case to matters of fact in controversy.

The charge against plaintiff's grantor is that of fraud and fraudulent concealment in two particulars: 1. In representing to his partner, the defendant Bryant, that he, the defendant Bryant, owed to him, Allen, $989.97 excess moneys paid by Allen on account of the Cherrioto Ranch, which in partnership they were managing with the view to its sale; 2. That by reason of this alleged indebtedness Bryant was induced to convey his half interest to Allen, Allen at the time being in actual negotiation with others for the sale of an undivided half of the ranch, which sale he subsequently effected at great profit, and knowledge of which negotiation he concealed from his partner. Four times has the trial court passed upon the evidence adduced to support these charges of fraud, with the result that four times it has exonerated Allen from any unfair dealing.

The circumstances of the case are these: Bryant had bought the Cherrioto Ranch, paying for it not one dollar in cash, but giving a mortgage for the full purchase price of $22,500. A railroad company had condemned a right of way through

the ranch, for which it was to pay twenty-five hundred dollars, and the vendor agreed to apply that money when received on account of the purchase. The contract called for payments on account of the purchase price from time to time. This being the situation, Bryant conveyed one half of his interest to Allen under an agreement whereby each was to bear one half of the expense and make one half of the payments on account of the purchase price, and upon sale reimburse themselves and divide the profits. A similar contract existed between the two as to another tract of land called the Pardee tract, which Bryant had also purchased. Allen kept the books showing the ranch transactions. The real estate market was dull, both parties had tried unsuccessfully to make a sale of the ranch, progress payments were coming due, and Allen had advanced more money on account of the ranch than had Bryant, and had demanded of Bryant that the expenditures be equalized, or, as Bryant asserts, had demanded from him the sum of $989.97. Bryant was seventy-six years old and a minister of the gospel. The inference is sought to be drawn, and seems to have been accepted by the court of appeals, that by reason of his years and profession he was ignorant of business, and fell a ready prey to the impositions of the partner whom he trusted, for reference in the opinion of the appellate court is made to the "helplessness of Bryant at that time in business matters, and the willingness and disposition of Allen to take advantage of his infirmity." But the truth of this matter, as disclosed by Bryant himself, is that, while a minister of the gospel, he had been long "engaged in secular business and had been engaged in the business of buying and selling land for a long time before he met Mr. Allen." It is shown that he was not only familiar with land transactions, but with other matters of business as well. For instance, he seeks to sell and discount promissory notes held by him (and this after the transactions with Allen), stating that he wished to use the money to purchase other lands, and that his method was "to make money by allowing other people to make money." Bryant, under examination, when confronted with certain inconsistencies in his testimony, asserts a failing memory, but it must regretfully be said, as will be pointed out, that his memory fails where recollection would not benefit his

cause. Instead, then, of a helpless, enfeebled old man with impaired memory, the record presents a man venerable in years, but long actively engaged, and after these transactions, still actively engaged, in the very kind and class of business over which this controversy arose. Moreover, it is always to be remembered that the weight of the evidence in this case must largely be determined by the credibility of the witnesses, of which the trial court is the sole judge. The man charged with fraud was dead and no defense of denial or explanation from him could be forthcoming. It is not too much to say, however, that wherever the evidence of defendant Bryant was susceptible of contradiction or disproof, it was fairly met and overcome. Here it is pertinent to add that the defendant had full and complete access to the books kept by plaintiff, had a copy made of them, and upon the trial no attack is made upon their veracity. As to the item of $989.97, Bryant testifies that Allen made demand upon him for the payment of this amount; that he believed Allen, who stated that this amount was due him, that he told Allen he would sell his store for thirty-five hundred dollars, and Allen advised him not to do so; the idea being that Allen so advised in furtherance of his nefarious scheme of compelling his partner to deed him his one-half interest in the ranch; that Allen spoke "harshly" to him, and that finally he conveyed to him his one-half interest in the ranch with the personal property thereon, the consideration being the cancellation of the indebtedness of $989.97 and Allen's note for fifteen hundred dollars. Considering Bryant's own independent knowledge of real estate and of the real estate market, that by his testimony the latter was dull and he and his partner had tried in vain to sell a ranch upon which they owed the full purchase price, with interest accumulating, and progress payments becoming due—considering these things, and that Bryant comes out whole and with fifteen hundred dollars from Allen, evidenced by the promissory note, it will not be said that the transaction bears upon its face any conspicuous evidence of iniquity, and doubtless nothing further would have been heard of it if Allen a short time thereafter had not succeeded in making an advantageous sale of a one-half interest.

But, coming to the first charge of fraud, the representation asserted by Bryant that Allen demanded from him $989.97:

The account presented to Bryant showed in detail the payments that each had made and the moneys that each had expended on account of the Pardee tract, the Cherrioto Ranch, and also the amount of moneys which Allen had advanced personally to Bryant. In no respect are these accounts or any of them shown to be false. As summarized, they were as follows:—

> "Due Allen
>     from ranch ........$  989.97
>         "   Pardee Tr. ...   300.95
>         "   W. S. Bryant .   211.88
>
> Total  ......$1502.80"

Bryant's statement that Allen insisted that he owed him $989.97, Allen being dead, was not susceptible of direct denial, but failing this, it is fairly well met by the evidence in the case. In the first place, Bryant, himself, testifies: "When Mr. Allen presented this account and it showed that he had advanced nine hundred and eighty-nine dollars and some cents, I understood that he had advanced that much more money than I had, and I made no objection to the amount. I found it substantially correct." Here, notwithstanding the witness's repeated declarations that Allen demanded $989 from him, is a positive statement of what the witness understood, and that understanding was in accordance with the fact,—namely that Allen had advanced *to the ranch account* $989 more than had Bryant. Again, the account itself shows three items, the first due to Allen upon account of the Cherrioto Ranch, the second due to Allen on account of the Pardee tract, and the third due from Bryant personally. It is singular that if Allen had meant to defraud, his account should so honestly have shown that he did not claim the money from Bryant but from the ranch, an account which obviously Bryant could settle either by paying into the ranch account the same amount that Allen had paid, or by paying to Allen personally one half of that amount. But if it be said that Bryant, in his ignorance, did not understand the meaning of the item, this, in turn, is answered by the evidence, for it is proven that in another similar transaction, touching the Pardee tract, a statement of the accounts between the two showed that Bryant at one

time had advanced $152.52 more than Allen, and that one
half of this amount was paid by check by Allen to Bryant
in the settlement of the account, the check being made to
Bryant's order for $76.26, and bearing upon its face the state-
ment that it was in settlement of the account to date.   In
view of the fact, therefore, that the account itself as presented
was not calculated to deceive an intelligent man, that Bryant
was an intelligent man versed in business affairs, that he had
had a previous settlement with Allen of just such an account,
the internal evidence is strong to the twofold effect that Allen
did not attempt to deceive him in this particular, and that
if he had attempted to deceive him, the attempt would have
been unavailing.   The finding of the court, therefore, upon
this matter is fully sustained, and if it be that this evidence
was before the court of appeal upon the former hearing, it
was overlooked, to the great injury of the respondents.   If
it was not before the court of appeal, then clearly the doctrine
of the law of the case cannot be invoked.   The principle which
is applicable is that declared in *Sneed* v. *Osborn*, 25 Cal. 619:
"If this court states the evidence in a cause, whether correctly
or incorrectly, the statement in no manner controls the court
below, and cannot prejudice the parties where a new trial is
had.   It is upon questions of law that the decision of the
appellate court becomes the law of the case, and not upon
questions of fact."

The decision of the court of appeals discusses the transfer
of the hay upon the ranch by Bryant to Allen, and a subse-
quent payment of Allen's note to Bryant by the sale of that
hay.   The appellate court, with the evidence before it, con-
cluded that the hay was transferred by Bryant to Allen upon
certain trusts.   This is in flat contradiction of the allegations
of Bryant himself under oath, even of his allegation under
oath made after that decision was handed down.   For it
appears that in an action for an accounting against Allen,
defendant made oath to the following: "That on, to wit, the
15th day of July, 1904, said defendant falsely and fraud-
ulently and with like intent to cheat this plaintiff, repre-
sented to this plaintiff that he, this plaintiff, was indebted
to said defendant by reason of moneys laid out and expended
in the management and sale of said Pardee tract, and in the
maintenance and equipment of said Cherrioto Ranch and the

transactions growing out of the same in the sum of $989.97. . . . And thereupon this plaintiff, believing the said statements of said defendant that this plaintiff was so indebted, and relying thereon, did deed to said defendant the remaining undivided half interest of said Cherrioto Rancho, subject to the mortgage thereon as aforesaid, and did sell therewith to said defendant the personal property thereon."

Here is a direct declaration of the defendant under oath that the hay was not sold upon any trust, but was sold as a part of the consideration of their settlement. Bryant's explanation as to why he should have accepted the hay in payment of the fifteen-hundred-dollar promissory note, if he believed that he owned one half of the hay, is entirely unsatisfactory. He says: "I suppose in taking the hay for the note that I felt like this, that I would settle the matter up and get it off my mind and get what I could out of it." And his testimony touching the transfer of the personal property, after laborious effort by counsel to arrive at the truth comes only to this: "Do you desire to be understood now, leaving out of consideration these papers that you have signed, that that personal property, including the hay on the ranch, passed to Mr. Allen or that it did not pass? Which way will you have it?" To this he answered: "I will have it simply as the matters stand before the court. It will be decided by them without my judgment in the matter, as I understand it. My judgment won't have any effect on that."

Even the pleading and testimony of Bryant that Allen, to further his fraudulent scheme, advised Bryant not to sell his store, as the latter contemplated doing, is answered by the undisputed facts that, if Allen did so advise, Bryant did not accept the advice, but, acting quite independently of it, endeavored to sell the store, took a week for the consideration of Allen's proposition touching the transfer of the ranch, and only at the end of that time, and after his effort to sell the store proved abortive, made conveyance to Allen upon the terms indicated.

Moreover, the evidence in this case fairly establishes that there was a consideration in addition to the cancellation of Bryant's indebtedness and the fifteen-hundred-dollar note given to him by Allen, and that consideration was the payment of the existing outstanding debts against the ranch, and

upon this again the evidence of Bryant is unsatisfactory. There was found amongst the papers and submitted to his inspection the following, in his own handwriting: "He is to have all hay and implements and all other personal property and pay all outstanding bills and debts of said ranch—personal property contracted by him, and also within four months he shall pay the Wilmington lumber bill used in building enginehouse, the pipe bill and wagon bill." It was shown that one of these bills, amounting to $397, was paid by Allen. But Bryant testified that Allen did not pay all of the indebtedness, that he (Bryant) paid for one half of the wagon and a large part of the store bill, which was over one hundred dollars— probably about ninety dollars of it. When cross-examined, he denied that he had charged these payments against Allen in a subsequent adjustment of the account, saying: "I don't know whether these amounts were credited in the Pardee settlement or not. I have no expectation about getting these amounts in the settlement of the Pardee matter." Yet the plaintiff is able to show, and does show, that these amounts were repaid to Bryant, thus further supporting plaintiff's contention that this was a part of the consideration for the transfer, and that the obligation was lived up to and met by Allen.

The allegation touching the fraudulent concealment by Allen of his prospective sale of a half interest in the Cherrioto Ranch is no better supported by the evidence. The purchaser of this half interest, and his half-brother, Doctor Rhea, who was likewise interested in the purchase, were both witnesses, and their testimony is that their first talk with Mr. Allen concerning a possible purchase occurred after the date of the transfer by Bryant of his interest in the property. The evidence is thus amply sufficient to sustain the finding of the court that the deed of defendants was executed to Allen before any negotiations were had by the latter looking to a resale of the ranch. This discussion of the evidence might be much extended, but such discussions can never be of value to the profession generally, for whose enlightenment and guidance the opinions of an appellate tribunal are preserved and handed down. Upon questions of fact, therefore, so much only should be said as may be necessary to support or reverse the decision reached, and to this extent only has this discussion proceeded.

· For the reasons given the judgment and order appealed from are affirmed.

Melvin, J., and Angellotti, J., concurred.

Hearing in Bank denied.