[Sac. No. 1967.   Department Two.—March 8, 1913.]

## PAULINE F. FOLEY and FRANK W. FOLEY and ALVAN R. FOLEY, by Their Guardian ad Litem, PAULINE F. FOLEY, Respondents, v. NORTHERN CALIFORNIA POWER COMPANY (a Corporation), Appellant.

NEGLIGENCE—LAW OF CASE—FINDING OF JURY PREDICATED UPON ERRONE-OUS INSTRUCTION—CONTRIBUTORY NEGLIGENCE— REVERSAL FOR ERROR IN INSTRUCTIONS.—In an action to recover damages for a death alleged to have been caused by the negligence of the defendant, where the jury, in pursuance of an erroneous instruction requiring too high a degree of technical knowledge on the part of the deceased respecting the instrumentality causing his death, found that he neg-ligently contributed thereto to such an extent as to prevent recovery, and accordingly rendered a verdict for the defendant, and thereafter the appellate court reversed an order denying the plaintiffs a new trial because of such erroneous instruction, the jury's conclusion re-garding the contributory negligence of the deceased did not become "the law of the case" on a second trial of the action, even if the evidence at the two trials was practically the same.

ID.—EVIDENCE ON RETRIAL—CUMULATIVE EVIDENCE.—It is held, however, upon a review of the evidence, that new testimony was introduced upon the second trial, which had an important bearing upon the question of negligence, and that the same should not be disregarded even if it were cumulative.

ID.—GUARDIAN AD LITEM—PROOF OF AUTHORITY.—In an action prose-cuted by a guardian *ad litem,* it is sufficient for the guardian to show the filing of a petition for the appointment and that the court had made an order therefor. It is not necessary, under sections 372 and 373 of the Code of Civil Procedure, for such guardian to file any bond or to subscribe any oath, or to receive letters of guardian-ship under the seal of the court.

ID.—MAP OF LOCUS IN QUO.—On the trial of such action, it is proper to admit in evidence a map for the purpose of locating the premises and as a diagram of the scene of the accident.

ID.—EVIDENCE OF PHYSICIAN—OPINION AS TO CAUSE OF DEATH AND IN-STRUMENTALITY USED.—A physician, who had made an examination of the body of the deceased, may not only give his opinion upon the cause of death, but may state his views regarding the instrumentality by which the fatal force was probably applied.

ID.—IMMATERIAL ERROR IN REJECTING EVIDENCE.—Error in sustaining an objection to a proper question asked a witness is rendered harm-less, if the witness subsequently testifies fully and without objection respecting the same subject matter.

APPEAL from an order of the Superior Court of Tehama County refusing a new trial.    John F. Ellison, Judge.

The facts are stated in the opinion of the court.

Reid & Dozier, and Jas. T. Matlock, Jr., for Appellant.

W. P. Johnson, and Frank Freeman, for Respondents.

MELVIN, J.—Defendant appeals from an order denying its motion for a new trial.

Pauline F. Foley, on her own behalf and as guardian *ad litem* of her two minor children, brought this action against defendant for damages because of the death of James M. Foley, husband of said Pauline and father of the minor children. Foley was killed by an electric current passing through one of defendant's power wires which had been broken and allowed to hang down from the pole to the ground. The case was tried first by a jury and a verdict for defendant was rendered. The district court of appeal reversed the order denying the motion of plaintiffs for a new trial because of error in an instruction. On the second trial a jury was waived and by stipulation the case was submitted on the testimony and exhibits of the former trial with some additional testimony of one John Berg. The court gave judgment for plaintiffs in the sum of four thousand dollars.

Appellant takes the position that the added testimony of Berg neither aids nor detracts from the proof of the contributory negligence of the deceased Foley; that the existence of such contributory negligence sufficient to excuse defendant was found by the jury at the former trial; that this court thereafter denied a motion for a rehearing, thus indorsing the conclusion of the jury; that thereby defendant's freedom from liability became "the law of the case" and that the court, upon the submission of the evidence at the second trial could properly render only a judgment in favor of defendant.

It is not necessary to review the testimony given at the previous trial. It is sufficient for the purposes of this opinion to refer to the statement of facts in the opinion of the district court of appeal (*Foley* v. *Northern Cal. Power Co.,* 14 Cal. App. 404, [112 Pac. 467]). At the conclusion of that

statement and a citation of applicable authorities, the court said: "We have, therefore, no hesitation in declaring that on the question of the negligence of defendant the conclusion should be in favor of plaintiffs." Upon the question whether or not Foley's contributory negligence was such as to preclude recovery by plaintiffs the district court of appeal said that there was "more room for candid difference of opinion." The order denying a new trial was reversed, however, because the jury was instructed erroneously that:

"A man of ordinary prudence and understanding, who has lived in a city, neighborhood or community where electricity is conveyed by means of power and pole lines for purposes of heat, light and power and where electric power transmission lines are installed and maintained, and who has been around electric power lines, transmission lines, service lines, machinery and appliances, is presumed to know the powers, dangers and potentialities of electricity and electric power."

In view of this reversal and the reason for it, we cannot see that the jury's conclusion regarding the contributory negligence of Foley became "the law of the case," even though the trial court had refused to grant a new trial. The jury, under an instruction requiring too high a degree of technical knowledge on the part of Foley, found that he negligently contributed to his own death to such an extent as to prevent recovery of damages by his widow and children. The court, holding of course to the erroneous doctrine announced in the instruction, denied a motion for a new trial. It follows by no means that under a proper view of the law the same facts would have led to the same conclusion either by a court or by a jury. Indeed, the reversal of the superior court's order by the district court of appeal indicates that upon a proper view of the law the record might have supported a verdict against the defendant. The judge at the second trial stood in exactly the same position which a new jury would have occupied if the case had been presented upon the same evidence as that adduced at the former trial, but considered under proper instructions with reference to the degree of knowledge and care imputable to Foley. Appellant cites several authorities upon "the law of the case," but none applies to the question before us. *Snyder* v. *Jack*, 140 Cal. 585, [74 Pac. 139, 355], is typical of these citations. In the former

trials of that action the undisputed facts had been practically the same as those developed at the latest hearing and the law applicable to those facts had been definitely announced by this court. Conceding, but not deciding, that in the case before us the facts developed at the two trials were substantially the same, the rule of law followed at the second trial in measuring the responsibility of Foley was very different from that declared by the district court of appeal and indorsed by this court in the refusal to transfer the case here for hearing. It is obvious that a determination whether or not Foley was contributorily negligent would depend both upon the facts and the declared law. A change in either might change the verdict of the jury or the conclusion of the court in a case in which a jury had been waived. In this case, in which the testimony upon the issue of contributory negligence left room, as the district court of appeal expresses it, "for candid difference of opinion," the trial court's views might well be entirely modified after the declaration of the law by the district court of appeal.

Thus far we have discussed the case upon the theory that the evidence at the two trials was practically the same. We are of the opinion, however, that Berg's new testimony had a very important bearing upon the question of negligence. He described the condition of the broken wire on the day before Foley's death. Even if this evidence should be regarded as cumulative it should not for that reason be disregarded. (*Wallace* v. *Sisson,* 114 Cal. 49, [45 Pac. 1000].) But it was not merely cumulative. By it for the first time Berg sought to show the position of the wire *before* the fatal accident. He placed it nearer the spot where the body was afterward found than it was on the following day. Among other things he said: "I saw where the wire struck the ground and went along the ground and curled up and went down to the ground again. A regular curl in the end of the wire. The curl went right back to the ground—the end of it—I suppose it was the end of it. I don't know. I didn't see the end of the wire. I saw there was a bend right in the wire, going down." There was snow on the ground and the court might well have believed from Berg's testimony at the second trial that as Foley approached the wire while he was walking under the low trestle and was obliged to stoop down,

he could not see that it was attached to the pole. To him it may have appeared as a piece of loose wire lying in the snow. Evidence justifying such a deduction would, of course, have an important influence upon the mind of the court in deciding the question of contributory negligence. The doctrine of "law of the case" has its origin usually in the presupposition of error in announcing a rule of law. Here appellant makes no attack upon the law as declared by the court of appeal and this case does not come within that very limited class in which the doctrine is applied to matters of evidence as distinguished from rulings of law. The "law of the case" is therefore not here properly invoked. (*Allen* v. *Bryant,* 155 Cal. 258, [100 Pac. 704] ; *Moore* v. *Trott,* 162 Cal. 273, [122 Pac. 462].)

Appellant asserts error in the failure of plaintiffs to prove that Pauline F. Foley had filed a bond as guardian *ad litem;* had taken an oath as such guardian; and had received letters of guardianship under seal of the court. It was sufficient for her to show, as she did, that she had filed a petition for appointment and that the court had made an order appointing her. (Code Civ. Proc., secs. 372, 373.) The children were not of sufficient age to nominate a guardian. It has been held that the provision authorizing an appeal from a judgment or order revoking letters of guardianship does not include an order appointing a guardian *ad litem,* and the court said: "No letters of guardianship are issued to a guardian *ad litem,* but his authority is evidenced by the entry in the minutes of the court appointing him." (*In re Hathaway,* 111 Cal. 271, [43 Pac. 755].) The sections of the code providing for appointment of guardians *ad litem* do not require such guardian to file any bond or to subscribe any oath.

There was no error in admitting in evidence an amended map of the Clark Addition to the town of Red Bluff. The map was used merely to locate the premises and as a diagram of the scene of the accident. It is proper for courts to admit illustrative charts, photographs, and maps. (*People* v. *Loper,* 159 Cal. 21, [Ann. Cas. 1912B, 1193, 112 Pac. 720].) It is not even suggested that the map as offered was incorrect.

Dr. John Fife was asked the following question : "What in your judgment was the cause of his (Foley's) death?" There was no error in propounding such a question. Dr. Fife had

examined the body of deceased and it has long been the rule that a physician who has made such examination may not only give his opinion upon the cause of death, but may state his views regarding the instrumentality by which the fatal force was probably applied. (*People* v. *Durrant,* 116 Cal. 210, 48 Pac. 75]; *State* v. *Young Harris,* 63 N. C. 1; *State* v. *Porter,* 34 Iowa, 133; *Williams* v. *State,* 64 Md. 393, [1 Atl. 887]; *Davis* v. *State,* 38 Md. 35; *Territory* v. *Egan,* 3 Dak. 119; [13 N. W. 570].)

The court sustained an objection to a question propounded to witness Hughes by defendant's counsel, "On the morning of the 17th of January, when you found the lines down, what did you do?" Hughes was the superintendent in the employ of defendant and the question was proper as bearing upon the subject of his care in repairing the lines which had been injured by the storm; but the error was harmless because Mr. Hughes afterward testified very fully without objection about the repairs to the broken lines and the precautions taken by him to avert accidents.

No other alleged errors require notice.

The order is affirmed.

Henshaw, J., and Lorigan, J., concurred.