[Civ. No. 1183.   Third Appellate District.—April 2, 1914.]

## C. H. OTTEN, Appellant, v. JOHN D. SPRECKELS, Respondent.

NEW TRIAL—ORDER GRANTING—CONFLICTING EVIDENCE—PROVINCE OF TRIAL COURT—REVIEW ON APPEAL.—Where there is a conflict in the evidence, an order granting a new trial upon the ground of the insufficiency of the evidence to support the verdict is entirely within the legal discretion of the trial court; and even in cases where there may not appear to be a conflict in the evidence, and where all the proofs seem to be favorable to one or the other of the parties litigant, the question as to the probative force of the testimony, on the motion for a new trial, is one whose determination is for the trial court.

ID.—PREPONDERANCE OR SUFFICIENCY OF EVIDENCE—QUESTIONS FOR JURY AND TRIAL COURT.—The plaintiff in a civil action must establish his case by a preponderance of proof, but although many witnesses may testify directly in favor of his position, and no adverse testimony be directly adduced, it is still with the jury, in the first instance, and finally with the trial court where a new trial is asked on the ground of the insufficiency of the evidence to support the verdict, to say whether such testimony, when subjected to the legal tests whereby the probative value of evidence is to be judged, measures up to the requirement of the law as to the degree of proof essential to the support of an issue of fact.

ID.—CONTRACT TO SUPPLY PAPERS FOR NEWSPAPER ROUTE—ACTION FOR BREACH—REFUSAL OF NEW TRIAL CONDITIONALLY.—In this action by the owner of a newspaper route to recover damages for breach of contract to supply him with newspapers to deliver to subscribers, the court did not abuse its discretion in requiring the plaintiff, as a condition to denying the motion of the defendant for a new trial, to remit the sum of three thousand dollars from the verdict of eight thousand dollars returned in favor of the plaintiff.

ID.—DAMAGES FOR BREACH OF CONTRACT—EVIDENCE—AMOUNTS OFFERED FOR ROUTE BY PURCHASERS.—In such action the fact that the plaintiff was offered certain sums for certain subdivisions of the newspaper route, while perhaps some evidence of the value of the route, is not the true or even an approximately satisfactory test of its actual value.   Neither is the fact that the defendant obtained a purchaser willing to pay a certain amount for the entire route.

ID.—EARNINGS AND AMOUNT PAID FOR ROUTE AS SHOWING ITS VALUE.— In determining the value of the route it is proper to consider the net sum that the plaintiff, with approximate uniformity, earned therefrom, and also the sum actually paid therefor.

ID.—CONTRACT—PROOF THAT SIGNER IS NOT REAL PARTY IN INTEREST.—
The plaintiff in such action may show by oral evidence that the
written contract, pleaded in his complaint and signed by another
than himself, was signed by such person as agent for the plaintiff
or as a mere matter of convenience, and that the plaintiff is the
real party in interest.

ID.—DENIAL ON INFORMATION AND BELIEF OF EXECUTION OF CONTRACT—
WHETHER ADMISSION OF DUE EXECUTION.—A denial by the defend-
ant, on information and belief, of the execution and delivery of
such contract, is not tantamount to an admission of its due execu-
tion, in the presence of positive denials that the plaintiff is the real
party in interest and that the person whose name is subscribed
signed as a matter of convenience or as agent for the plaintiff.

ID.—VARIANCE—ALLEGATION OF WRITTEN CONTRACT—PROOF OF ORAL
AGREEMENT.—The variance between allegations and proof is not
fatal where the complaint alleges the contract as written, while the
evidence shows an oral agreement, the plaintiff being driven to parol
evidence by the ruling of the court excluding the contract as alleged.

APPEAL from an order of the Superior Court of the
City and County of San Francisco granting a new trial.
John Hunt, Judge.

The facts are stated in the opinion of the court.

Mastick & Partridge, for Appellant.

Bourdette & Bacon, for Respondent.

HART, J.—The plaintiff brought this action to recover dam-
ages in the sum of ten thousand seven hundred and fifty dol-
lars, for the alleged breach by the defendant of the terms
of a certain contract, which is set out *in haec verba* in the
complaint.

A jury was called to try the questions of fact, and a verdict
returned in favor of the plaintiff, assessing his damages at
the sum of eight thousand dollars. In due time a motion for
a new trial was submitted by the defendant upon the grounds
of newly discovered evidence, etc., excessive damages appear-
ing to have been awarded under the influence of passion and
prejudice, insufficiency of the evidence to justify the verdict
and errors in law occurring at the trial and excepted to by
the defendant. Upon hearing said motion, the court made

the following order: ". . . It is ordered that the motion will be granted, unless the plaintiff within twenty days from the date of entry hereof remits from the amount of the verdict and judgment herein the sum of three thousand ($3000.00) dollars. If said amount will be remitted, an order will be entered denying defendant's motion for a new trial."

The plaintiff having refused or failed to remit the amount so specified by the court, the motion for a new trial stood as having been granted. This appeal is prosecuted by the plaintiff from the order granting said motion.

The contract set out in the complaint is in writing and purports to have been made on the thirtieth day of September, 1903. Although, in the preliminary part of the instrument, technically called the "premises," the name of the plaintiff appears as "the party of the second part," the instrument thus purporting to be that of the defendant and the *San Francisco Call,* as the parties of the first part, and the plaintiff as the party of the second part, the agreement was signed by one Nicholas Ohlandt as the second party, or in the place and stead of the plaintiff.

The agreement constitutes the written evidence of a sale and transfer by the first parties to the second party, in consideration of the sum of three thousand dollars, paid by the latter to the former, of "the agency of and for the said *San Francisco Call,* and of and for that certain newspaper route of the said . . . *Call,* lying and being in and about the city of Berkeley, state of California, and more particularly described as follows, to wit:" and here follows a minute description of the boundaries of the route so sold.

The contract provided that the parties of the first part will, at a certain specified price per week, or at such other price as may thereafter be mutually agreed upon by the parties, furnish the second party with a sufficient number of the daily issues of said newspaper to supply said newspaper route. It further provided that the second party "shall manage, control and conduct the said newspaper route in such manner, and with such efficiency, as shall be for the best interests of the said *San Francisco Call* newspaper, and shall maintain and preserve the extent and value of said newspaper route to the satisfaction of said parties of the first part. . . . And the said parties of the first part . . . further reserve the

right to give their written consent before any legal transfer of this contract shall be made."

The complaint alleges that, "although said contract was signed by Nicholas Ohlandt, the real party in interest was and still is this plaintiff; that said contract was signed by said Nicholas Ohlandt only for convenience, and that said facts were at the time of entering into said contract, and ever since, well known to defendant." It is further alleged that, on the first day of January, 1909, the defendant "ceased to supply the daily or any issues of said *San Francisco Call* to this plaintiff, and ever since has refused and neglected, and still refuses to supply any thereof to plaintiff."

The defendant filed an answer to the complaint and also a cross-complaint.

By the answer, the defendant alleges that "he has no knowledge, information or belief as to whether the contract alleged in said complaint between the said plaintiff and this defendant was ever executed or delivered as alleged in paragraph one thereof, and basing his denial upon that ground, denies that the plaintiff and defendant herein did, on the thirtieth day of September, 1903, or at any other time, or at all, enter into the contract set out" in said complaint, "or ever entered into any contract of any kind or character," or that he ever entered into the contract set out in the complaint with Nicholas Ohlandt, as a party thereto. The answer positively denies that the real party in interest to said contract was or is the plaintiff, and likewise denies that said Ohlandt signed said contract for convenience only, or that, at the time the same was executed, the defendant knew that the plaintiff herein was the real party in interest to the said contract.

The cross-complaint avers that, for more than two years prior to the commencement of this action, which was April 21, 1909, the plaintiff was engaged in distributing the *Call* in a certain district in the town of Berkeley, under an agreement whereby the plaintiff paid the defendant for such newspapers as were delivered to him for distribution in said district, and collected from the subscribers payments for the papers so delivered, monthly, in the name of the . . . *Call,* for the defendant, "and at all times conducted the business of distributing the said newspapers and collecting therefor, as the business of the said *San Francisco Call*"; that said

agreement further provided that the plaintiff should so manage the distribution and delivery of the said newspapers and make such collections as to maintain and preserve the extent and value of the business done by the said . . . *Call* in said district, and to the satisfaction of the said defendant.

It is charged in the cross-complaint that the plaintiff failed properly to manage and conduct said business, in that he frequently failed to deliver said newspapers to subscribers at the proper hour in the morning; that, in rainy weather, he caused the same to be thrown into the yards of the subscribers, instead of delivering them upon the porches, so that said papers would lie in the rain and become wet, and that he failed to present or collect the accounts for said newspapers promptly, and would allow the same to run for months at a time uncollected. It is alleged that, by reason of the plaintiff's aforesaid carelessness and negligence in properly managing said business and promptly collecting the accounts for the newspapers supplied to him by the defendant for distribution and delivery in said district, the business of the said defendant in the said district was reduced and decreased in extent and its value greatly depreciated. The defendant, so the cross-complaint further alleges, often called the plaintiff's attention to his remissness in attending to and managing the business in the manner exacted by the agreement, but that the plaintiff paid no attention to the remonstrances of the defendant in that regard; that the business of the defendant was thereby threatened with extinction and that thereupon, and on the first day of January, 1909, the defendant did refuse to deliver to the plaintiff any newspapers to be used by him and distributed in the said district and commenced the distribution thereof upon his own account.

The plaintiff, answering the cross-complaint, specifically denies the averments thereof.

The plaintiff contends that the evidence is sufficient to support the verdict in all respects, and that, therefore, the court was without legal justification for ordering him, as a condition precedent to the denial of the defendant's motion for a new trial, to remit or consent to the reduction in the sum of three thousand dollars, or in any other sum of the amount or damages awarded him by the jury.

It will not, of course, be doubted that the order from which this appeal is prosecuted, although expressing the judgment of the court that the evidence is sufficient to justify a verdict for the certain amount of damages specified therein, is nevertheless one granting a new trial upon the ground that the evidence is insufficient to support the verdict as rendered and returned. Indeed, the order is, in legal effect, nothing less than one based upon the ground that the evidence is insufficient to justify the verdict.

While counsel for the defendant insist (whether correctly or incorrectly, it is not necessary to determine here) that the order appealed from, by reason of its peculiar phraseology, may be upheld upon any of the grounds stated in the notice of motion for a new trial, assuming all said grounds to be legally tenable, we are of the opinion that the only question submitted by this appeal to which attention need be given is whether it may reasonably be held that the record discloses any evidence from which the jury might have justly found that the plaintiff suffered no greater damage than that represented by the sum to which the court required the plaintiff, on pain of granting the motion for a new trial, to consent to a reduction of the amount of damages awarded by the jury. If there is such evidence, then it is not for this court to declare that the order appealed from is erroneous; for it is well settled that where there is a conflict in the evidence, an order granting a new trial upon the ground of the insufficiency of the evidence to support the verdict is entirely within the legal discretion of the trial court. (*Domico* v. *Casassa,* 101 Cal. 413, [35 Pac. 1024]; *Mills* v. *Oregon Ry. & Navigation Co.,* 102 Cal. 357, [36 Pac. 772]; *Warner* v. *Thomas Dyeing & Cleaning Works,* 105 Cal. 409, [38 Pac. 960]; *In re Martin,* 113 Cal. 480, [45 Pac. 813]; *Green* v. *Soule,* 145 Cal. 96, 102, [78 Pac. 337]; *Cutten* v. *Pearsall,* 146 Cal. 690, [81 Pac. 25]; *McCarthy* v. *Morris,* 17 Cal. App. 723, [121 Pac. 696]; *Shea-Bocqueraz Co.* v. *Hartman,* 20 Cal. App. 534, 536, [129 Pac. 807].) Indeed, it has repeatedly been said in the cases that the action of a trial court, in granting a new trial upon the ground of the insufficiency of the evidence to justify the decision, "is so far a matter within its discretion that, if there is *any appreciable conflict* in the evidence, it is not

open to review.'' (*Newman* v. *Overland Pac. Ry. Co.,* 132 Cal. 74, [64 Pac. 110] ; and cases therein cited.)

It is true, as is said in *Harrison* v. *Sutter St. Ry. Co.,* 116 Cal. 161, [47 Pac. 1020] ; ''that such discretion is not a right to the exertion of the mere personal or arbitrary will of the judge, but it is a power governed by fixed rules of law, and to be reasonably exercised within those rules, to the accomplishment of justice. But so long as a case made presents an instance showing a reasonable or even fairly debatable justification, under the law, for the action taken, such action will not be here set aside, even if, as a question of first impression, we might feel inclined to take a different view from that of the court below as to the propriety of its action. . . . The opportunities of the trial court, in such instances, for reaching just conclusions are, as a general thing, so superior to our own, that we will not presume to set our judgment against that of the former, where there appears any reasonable room for difference.''

Moreover, even in cases where there may not appear to be a conflict in the evidence, and where all the proofs seem to be favorable to the one or the other of the parties litigant, the question as to the probative force or evidentiary value of the testimony, in a proceeding on a motion for a new trial based upon the ground that the evidence is insufficient to justify the verdict, is one whose determination is with the trial court. The rule (elementary and commonly familiar in our system of jurisprudence) is that the plaintiff in a civil action must establish his case by a preponderance of proof, but, although many witnesses may testify directly in favor of his position, and no adversary testimony directly adduced, it is still with the jury, in the first instance, and finally with the trial court, where a new trial is asked on the ground stated, to say whether such testimony, when subjected to the legal tests whereby the probative value of evidence is to be judged, measures up to the requirement of the law as to the degree of proof essential to the support of an issue of fact. Of course, as has frequently been asserted, neither the jury nor the judge, in such a case, can arbitrarily reject testimony received in proof of the ultimate fact, or thus declare it to be unworthy of credence, but it is the duty of both, when

24 Cal. App.—17

exercising their respective functions with reference thereto, to consider and dispose of it by the light of the surrounding circumstances of the transaction constituting the subject-matter of the litigation, and their action in that regard will not be disturbed on appeal where there appears to flow from the general surrounding circumstances of the case probable justification for discrediting or giving no weight to testimony which, on its face, may bear all the earmarks of probability.

Now, as before stated, from the nature of the order complained of here, it is manifest that the question with which this court is mainly concerned has reference to the evidence bearing upon the question of the value of the route over which this controversy has arisen, such value obviously constituting the measure of damages for the alleged breach of the agreement which is the foundation of the plaintiff's right to a recovery, if any he has.

An examination of the record before us will show that the testimony—both that produced by the plaintiff and that presented by the defendant—addressed to the question of value it not of a very satisfactory character, yet, testing the evidence upon that element of the case by the principles above stated, we do not feel that we are thus placed in a position to say that the court, in making the order from which this appeal is prosecuted, transcended the bounds of a sound judicial discretion.

It appears that when the plaintiff offered the pleaded contract in evidence, objection by counsel for the defendant to its admission was sustained by the court. The record does not reveal the particular ground upon which the objection was interposed or sustained, but it appears from the briefs that the theory upon which the contract was excluded was that, from the fact that the instrument appeared upon its face to have been signed and executed by said Ohlandt, it was not the contract of the plaintiff and that the latter was not, therefore, the real party in interest thereto. However, the court permitted the plaintiff, over objection by the defendant, to prove an oral agreement, between which and the contract pleaded in the complaint we perceive no substantial difference in terms, conditions, etc., whereby the plaintiff was vested with the agency of the *Call* in the territory described in the contract as set out in the complaint for the distribution and delivery therein of the said newspaper.

The evidence addressed to the proof of the value of said route showed these facts: That, in the year 1903, the plaintiff's net income from the route amounted to the sum of one hundred and ten dollars per month; that by the month of November, 1906, he had increased the number of subscribers in his route from four hundred and seventy to nine hundred, and that the expense in serving each subscriber remained the same as it had always been during the period preceding that time; that, in the month of November, 1906, the plaintiff delivered papers to about five hundred subscribers and netted therefrom the sum of one hundred and thirty-one dollars; that, in August, 1908, the plaintiff leased to one Mills a portion of the route, in which portion there were five hundred subscribers, and for which the latter paid to the plaintiff the sum of fifty dollars per month, or ten cents per subscriber; that thereafter (in the month of September, 1908) the same territory leased to Mills was leased to one Hanna, the monthly rental therefor being fifty dollars; that, after the plaintiff had leased to Mills as above explained, he had left six hundred and sixty-two subscribers to whom he delivered the *Call,* and that his net profits from the delivery to said subscribers and the rentals received for other portions of his territory totaled a sum exceeding two hundred dollars per month. It further appears that the plaintiff had been offered three thousand two hundred and fifty dollars for a certain one-third of the territory, three thousand seven hundred and fifty dollars for another third thereof and three thousand seven hundred and fifty dollars for the remaining third, totaling for the entire territory the sum of ten thousand seven hundred and fifty dollars, which constitutes the amount for which he has sued.

Ohlandt, testifying for the plaintiff, was permitted to say, against the objection by the defendant, that he bought the route for the plaintiff, Otten, and one Cordes, who were his friends, and that his "best recollection" was that he paid therefor between eight and nine thousand dollars. This testimony undoubtedly referred to the transaction involving and culminating in the written contract set out in the complaint, and, parenthetically, it may be observed that there is a wide variance between said testimony and said contract as to the sum paid by Ohlandt for the route under that instrument,

which declares that its consideration or the amount paid for said route was the sum of three thousand dollars.

The foregoing represents. a statement, in substance, of all the testimony adduced by the plaintiff in support of his estimate of the value of the route.

The defendant showed that, having become dissatisfied with the plaintiff's management of the business of distributing the *Call* in the territory involved in this controversy, he decided to terminate the agreement whereby the latter became his agent in said territory, and to. that end procured a purchaser of said route, who agreed to pay therefor the sum of five thousand dollars, the same to be paid to the plaintiff, and that said proposed purchaser deposited with the *Call* the sum of five hundred dollars, on the purchase price. The plaintiff refused to accept this offer, declaring it to be inadequate to the value of the route. The defendant, however, further showed, by the production of copies of letters addressed, from time to time, by the *Call* to the plaintiff, that the latter's management of the business of distributing and delivering that newspaper in his territory was inefficient and, consequently, unsatisfactory to said newspaper and its patrons, and that, as a result of such mismanagement, the business of said publication was rapidly falling off and its future prospect in said territory thereby seriously menaced; that, to avert such result, or to counteract the effect of the plaintiff's mismanagement of and asserted inattention to the business, the *Call*, at extra expense, sent a man to said territory with instructions to assist the plaintiff in properly handling the work and with authority to take such course as might be deemed essential to a rehabilitation of the business of the *Call* within said territory. This constitutes an epitomized statement of about all the testimony presented by the defendant.

It is manifest, from a review of all the testimony in the case, that, as declared, the showing upon the question of the value of the newspaper route involved herein is exceedingly meagre and, therefore, unsatisfactory. The fact that the plaintiff was offered certain sums for certain subdivisions of the route, while, perhaps, constituting some testimony of the value thereof which should be considered, is not the true or even an approximately satisfactory test of its actual value. Indeed, such testimony involves nothing more than the mere

opinion upon the question of the value of the route of those expressing willingness to give therefor the prices offered by them, and even as opinion testimony it does not carry the weight as proof of value that may ordinarily be justly accorded expert testimony, since there is disclosed no standard or basis by which the witnesses were governed in offering the prices named, or, in other words, no reasons given why the prices named represented a fair valuation of the route.    The same observations are, of course, applicable to the testimony, presented by the defendant, that the *Call* had procured a purchaser of the territory willing to pay therefor the sum of five thousand dollars—a sum at which evidently the *Call* estimated the actual value of the route to be.    Upon the question of value, however, this opinion testimony of the defendant is, to all appearances, equal, in evidentiary force, to that adduced by the plaintiff.    Whatever force, then, that character of testimony may be deemed to possess as tending to establish the value of the route, it may be assumed, in support of the order appealed from, that the court, in considering the question of value, on the motion for a new trial, conceived and determined that the defendant's opinion testimony upon that subject was more reliable, or under all the circumstances of the case, the more reasonable estimate of the actual worth of the route than that of the same general character presented by the plaintiff.

But, as the plaintiff well asserts, it was proper to consider, in determining the value of the route, the net sum that he, with approximate uniformity, earned therefrom.    It was likewise proper to consider the sum actually paid therefor, if there was evidence thereof.    Unquestionably these constituted important factors in the determination of value in this case. But they are by no means conclusive upon the question of value.    The element of uncertainty as to the period of time during which the agreement might exist is of equal importance in testing the value of the territory.    Or, as the proposition may thus be stated: The element of net earnings and that of the money actually paid for the right to deliver the newspaper in the route should be considered, as the trial court undoubtedly considered them, in the light of the nature of the agreement or the terms and conditions thereof and the character of the right vested in the plaintiff.

It is obviously true that the fact that a certain sum may be paid for a certain business or piece of property does not itself necessarily establish the actual value of such business or property. The buyer may have made, as is often the case, an improvident purchase—that is, paid far more for the thing bought than it is actually worth as an income producer.

As to the net earnings of the plaintiff, in their bearing on the question of value, it must be kept in mind that they are not to be regarded, strictly speaking, in the light of returns on the investment of money. As stated, it is true that the amount paid by the plaintiff for the exclusive right to distribute the *Call* within the designated territory must be considered, yet the success of the business is not, as in the ordinary or usual investments of capital, dependent upon the money paid for the route but upon the plaintiff's personal services, from which his income is directly derived. It is, in other words, himself and not the money paid for the right that is working and earning the returns. But, unquestionably, he acquired, by virtue of the agreement, a right of property in said territory—the exclusive right to distribute and deliver the *Call* therein—of which he cannot be divested without just compensation; yet the right so acquired is little, if, indeed, in any degree, superior to a qualified right of property, since, as the testimony shows, the transferee of said right reserved to itself the authority and the power of terminating the agreement by requiring the plaintiff to transfer the route to some other person, satisfactory to the *Call*, whenever the plaintiff's management of the business became inefficient or in any substantial manner unsatisfactory to said newspaper. In other words, the right remained absolute only so long as the plaintiff rendered efficient service. Therefore, the value of the right to the plaintiff rested largely upon whether he did or did not manage the route according to the requirements of his contract. Manifestly, then, the value of said route would be much greater when efficient service is rendered than when the service is not efficient and (as there is evidence tending to show occurred before the commencement of this action) the plaintiff is, for that reason, required to transfer his right to another. In any event, this element of uncertainty, although capable of being removed by the conduct of the plaintiff himself, constituted, in view of the evidence

presented by the defendant, tending to disclose an unsatisfactory management of the business of the plaintiff, an important factor entering into the question of value.

Thus, undoubtedly, the trial court, on the motion for a new trial, considered and weighed the exceedingly unsatisfactory evidence upon the question of value, and so reached the conclusion that the *Call's* estimate of the value of the route was, under all the circumstances, fair and just. At all events, as stated in the outset of this opinion, this court cannot, after a painstaking review of the record, declare that the court abused its discretion in making the order appealed from.

In view of a future trial of this action, it is believed to be proper to express our views on some of the other points made here.

In our judgment the trial court should have permitted the plaintiff to prove the written contract pleaded in his complaint, upon a showing that, as the complaint alleges, the same was entered into by the parties of the first part and the plaintiff, that the latter was, therefore, the real party in interest to said contract, that Ohlandt signed it as a mere matter of convenience only, or as the agent of the plaintiff, and that the defendant was, at the time of the execution of the agreement, familiar with those facts, or, in other words, knew that the plaintiff was the real party in interest thereto. We can conceive of no rule or principle of law which may justly preclude proof *de hors* a written contract of the fact that one of the named parties thereto is only an ostensible and not the real party in interest to the instrument—that is, that the party whose name is subscribed to the instrument signed it for and as the agent or attorney-in-fact of the real party in interest— particularly where, as here, it is alleged that that fact and the reason for it were known and acquiesced in by all the parties at the time of the execution of the agreement. Indeed, the contract declares that it was made and entered into between the first parties and the plaintiff, and, as stated, no reason in principle is discernible why a parol explanation of the fact that a third party signed it as the agent of the plaintiff would not be perfectly proper.

The point made by the plaintiff that the denial of the execution of the contract as pleaded on information and belief is tantamount to an admission of its due execution (*Loveland* v.

*Garner,* 74 Cal. 298, 300, [15 Pac. 844], is, in view of other denials of the answer in that connection, only in part sustainable. While it is true that the answer, on information and belief, denies the execution and delivery of the contract, it positively denies that it was signed by Ohlandt as a matter of convenience only, that the plaintiff is the real party in interest thereto and that such signing by Ohlandt and the interest of plaintiff in the contract were known to the defendant at the time of the execution of the instrument. Thus upon those points a direct issue is tendered, and it will, therefore, rest upon the plaintiff, as above intimated, if, on the retrial of the case, he relies on the contract as alleged by him, to support by proof the last mentioned allegations of the complaint, otherwise the instrument cannot be admitted as evidence of the agreement of the parties.

It is also perhaps well to notice the point, urged by the defendant in support of the order, that there is a variance between the contract pleaded by the plaintiff and the evidence. The action, as seen, is for the breach of a written contract and the proof shows an oral agreement. It would perhaps have been more regular had the plaintiff amended his complaint by setting up the oral agreement when he was driven to the proof thereof by the ruling excluding the contract alleged by him. But it cannot be said that the allowance of proof of the oral agreement was prejudicial to the defendant for these reasons: 1. There is, as before stated, no material or substantial difference in terms and conditions between the oral agreement and the written contract. The only difference between the two lies in the fact that one is in writing and the other not. 2. The defendant, in his answer, in effect, admits that the plaintiff was vested with the right to distribute and deliver the daily issues of the *Call* in the district or territory described in the complaint, but denies that the route is of the value of ten thousand seven hundred and fifty dollars and alleges that it is not of value exceeding one thousand dollars. The cross-complaint also admits that the plaintiff, under an agreement with the defendant, was engaged in distributing the *Call* in the district referred to. But, if there is any force in the objection under consideration the ground therefor may readily be removed at a future trial of the case.

There are many alleged errors pointed out by the defendant in the rulings of the court on the admission of evidence which we do not deem it requisite to notice at this time.

For the reasons herein given, the order appealed from is affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 1, 1914.