[S. F. No. 8203. In Bank.—June 22, 1920.]

## C. H. OTTEN, Respondent, v. JOHN D. SPRECKELS, Appellant.

[1] APPEAL—DECISION BY DISTRICT COURT OF APPEAL—LAW OF CASE. The decision of the district court of appeal constitutes the law of the case on a subsequent appeal to the supreme court if the facts are the same as those upon which the decision was predicated.

[2] ID.—DETERMINATION OF APPLICABILITY OF DOCTRINE—EXAMINATION OF RECORD UPON FORMER APPEAL.—The supreme court in determining whether the decision of the district court of appeal on a former appeal constitutes the law of the case may examine the record used on the former appeal in order to ascertain if the facts are the same as those upon which the decision was predicated.

[3] ID.—DIFFERENT FACTS—DOCTRINE INAPPLICABLE.—Where the facts on a second appeal are substantially different from those on a former appeal, the doctrine of the law of the case does not apply.

[4] PRINCIPAL AND AGENT — NEWSPAPER ROUTE CONTRACT — RIGHT OF REVOCATION—AGREEMENT OF FAITHFUL PERFORMANCE—EFFECT OF.— A stipulation in a contract creating an agency for the sale and

delivery of a newspaper that the agent will faithfully perform the duties required of him by his contract of employment, is not such a valuable consideration as to take the contract out of the rule of section 2356 of the Civil Code that an agency may be terminated by the principal, or to bring it within the rule that if an agency is given for a valuable consideration the principal will be liable in damages if he revokes it before the agent has had a reasonable time to enjoy his agency so as to some extent to reimburse himself, since the law would make the agent subject to such obligation without any stipulation.

[5] ID.—AGENCY REVOCABLE AT WILL—RIGHTS OF AGENT.—The benefit of an agent's services go to his principal and not to the agent, and while a contract of agency which gives the agent a profitable employment is valuable to him, and if he is allowed by his principal to procure another to perform the service in his stead, his agency may have a commercial value, and as between him and the substitute may have all the attributes of property, he has no interest or right which he can assert against his principal as a basis of damages for revocation, since the agency is revocable at will.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John Hunt, Judge. Reversed.

The facts are stated in the opinion of the court.

Samuel M. Shortridge for Appellant.

Mastick & Partridge for Respondent.

SHAW, J.—The defendant appeals from a judgment in favor of the plaintiff.

The cause has been tried twice. Upon the first trial a verdict was returned for the plaintiff and a new trial was thereupon ordered. From this order the plaintiff appealed. The appeal came before the district court of the third district for decision and the order was affirmed. (24 Cal. App. 251, [141 Pac. 224].) The plaintiff applied to the supreme court for a rehearing and it was denied. The respondent contends that the decision of the district court upon the appeal from the order granting a new trial constitutes the law of the case, binding upon the lower court and upon this court upon the question of the legal effect of the contract set forth in the complaint upon which the

judgment is based. The denial of a rehearing by this court is of no significance as an approval of the law stated in the opinion of the district court of appeal; for the plaintiff in his petition did not complain of the points there decided in his favor, and he now invokes, as the law of the case, certain parts of the opinion which are favorable to him and which this court has had no occasion to consider. [1] The decision, nevertheless, constitutes the law of the case to the same extent as if it had been made by this court. It is necessary, therefore, to determine whether or not, upon the second trial, the facts were the same as those upon which the conclusions of the district court as to the law were predicated, since otherwise the doctrine of the law of the case does not apply.

The complaint alleges a contract in writing, which it sets out in full. It then alleges facts which it is claimed constituted a breach thereof and states the amount of the resulting damages. On the first trial this writing was not admitted in evidence. Evidence of oral negotiations leading up to the execution of the writing was given and the trial court treated this as evidence of an oral contract. The complaint was not amended, but the cause was submitted to the jury on the theory that proof of an oral contract was admissible, with the result already stated. The district court held that the writing was improperly excluded by the court below. Upon the second trial the writing set forth in the complaint was admitted in evidence and it formed the basis of the verdict and judgment. It is necessary therefore to inquire whether or not the evidence of the oral negotiations upon which the district court based its conclusion as to the effect of the contract was substantially the same as the written contract upon which the present judgment was based. [2] The record used on the former appeal may be examined by us on this appeal in order to determine this question. (*McKinley* v. *Tuttle,* 42 Cal. 576.)

The contract alleged was executed on September 30, 1903, between "the 'San Francisco Call,' and John D. Spreckels, the parties of the first part, and C. H. Otten, the party of the second part." It may be inferred from its language that the "San Francisco Call" was a newspaper which was then being printed somewhere and circulated in Berkeley and that Spreckels was either the owner, or was in control, of the business of publishing and circulating it, but these

facts are not alleged in the complaint. In describing the contract we use the name, "Spreckels," to designate the party of the first part. Its material provisions are as follows: "In consideration of $3000.00 paid to Spreckels by Otten," Spreckels sold, transferred, and delivered to Otten "the agency of and for the 'San Francisco Call,' and of and for that certain newspaper route" of said paper in Berkeley, particularly described. Spreckels also agreed to deliver to Otten, daily, enough copies of the paper to supply said route. Otten was to pay therefor one cent per copy and eight cents per month in addition. The subscription price of the paper was seventy-five cents per month, subject to increase or reduction at the will of Spreckels. It provided that Otten "shall manage, control and conduct the said newspaper route above described in such a manner, and with such efficiency, as shall be for the best interests of the said 'San Francisco Call' newspaper, and shall maintain and preserve the extent and value of said newspaper route to the satisfaction of said Spreckels, and in all respects keep and perform all of his obligations unto the said Spreckels, arising out of the possession and management of said newspaper route during such time as the said Otten shall be in possession thereof." It further provided that Spreckels reserved the right to give his "written consent before any legal transfer of this contract shall be made." This is the contract the effect of which the court is now required to consider and to compare with the oral contract proven in the case and construed by the district court of appeal as above stated. It is to be observed, however, that the recitation in the instrument that the three thousand dollars was paid by Otten to Spreckels for its execution was not true. It was admitted upon the last trial that no consideration for the contract passed between the parties, other than their respective stipulations therein.

The record on the first appeal shows that on the first trial, evidence was given regarding the oral negotiations. The district court considered this as evidence of the contract between the parties. This evidence was in effect that Otten had been engaged in distributing the "San Francisco Call" in Berkeley ever since the year 1896, in connection with one Cordes; that on or about September 30, 1903, he made an arrangement with the agents of Spreckels to continue the delivery of the papers in the territory in Berkeley

embraced in the territory described in the contract afore-
said, and to pay Spreckels one cent the copy for the papers
so distributed; that Spreckels was to deliver to him at
Oakland the number of papers required to supply the sub-
scribers in the Berkeley territory, and that Otten had them
distributed to subscribers within the territory by certain
persons whom he employed for that purpose; that he made
out the bills to the subscribers and collected them monthly
as they became due, deducting his own charges as arranged,
and returned the balance to Mr. Spreckels. It was further
shown that Otten was to be allowed to sell the territory at
any time he had a party who would buy it, who would be
agreeable to Spreckels; that if Spreckels was not satisfied
with Otten's services, Otten was to be notified and then
have an opportunity to sell out the territory to some other
person; that Otten paid between eight thousand and nine
thousand dollars for the route, and that when the agency
was terminated on January 1, 1909, the defendant had
procured one McCoy to buy out Otten and pay him five
thousand dollars, and offered the opportunity to Otten to
sell out his rights or route at that price, which offer Otten
refused.

Concerning the rights of Otten under this oral contract
the district court on the former appeal, in discussing the
question of the sufficiency of evidence to sustain the verdict
for the amount of damages allowed, said (24 Cal. App. 262
[141 Pac. 228]): "Unquestionably, he acquired, by virtue
of the agreement, a right of property in said territory—
the exclusive right to distribute and deliver the 'Call'
therein—of which he cannot be divested without just com-
pensation. . . . The right remained absolute, only so long
as the plaintiff rendered efficient service." This declara-
tion, it is now claimed, establishes the law of the case.

The oral contract, according to the testimony above re-
lated, was given for a valuable consideration, amounting
to at least eight thousand dollars, and it included an agree-
ment by Spreckels that Otten should have the right at any
time to transfer the agency to some other person acceptable
to Spreckels, and that even if Spreckels was not satisfied
with Otten's manner of performing the service, Otten was
to have notice thereof and an opportunity to transfer the
agency to some person satisfactory to Spreckels, and to

obtain for himself whatever sum of money such person would pay for the privilege of becoming such agent.

No such provisions are contained in the written contract, and at the last trial it was admitted that Otten did not pay Spreckels any money for its execution. [3] The facts are therefore substantially different and the doctrine of the law of the case does not apply. (*Allen* v. *Bryant,* 155 Cal. 259, [100 Pac. 704]; *McLeran* v. *Benton,* 73 Cal. 337, [2 Am. St. Rep. 814, 14 Pac. 879]; *Mitchell* v. *Davis,* 23 Cal. 383; *Smith* v. *Goethe,* 159 Cal. 631, [Ann. Cas. 1912C, 1205, 115 Pac. 223]; 4 Corpus Juris, 1095, footnote 78.)

We may therefore consider the effect of the contract pleaded free from any embarrassment arising from the law laid down in the former decision.

In the case entitled *Boehm* v. *Spreckels, ante,* p. 239, [191 Pac. 5], submitted simultaneously with the present case, we considered the question of the legal effect of a contract relating to a "newspaper route" which is similar to the contract with the plaintiff, Otten, set forth in the complaint, and certainly more favorable to the theory that it vests a property right in the carrier of the papers. We have there held that such a contract creates an agency only; that it does not vest in the agent any interest in the subject of the agency; that the agency is not coupled with an interest; that it is for an indefinite period, and hence that it is revocable by the principal at any time.

We further held that unless such agency was given for a valuable consideration, it could be revoked by the principal without liability to the agent for any loss or damage to him that might be caused by loss of the compensation provided for him by the contract of agency. The agency in the present case was not given for a valuable consideration.

[4] It cannot seriously be contended that the effect of the stipulations of the respective parties, as being a consideration sufficient to support it as a contract, is sufficient to take it out of the rule of section 2356 of the Civil Code that an agency may be terminated by the principal, or to bring it within the rule that if an agency is given for a valuable consideration, the principal will be liable in damages if he revokes it before the agent has had a reasonable time to enjoy his agency, so as to some extent to reimburse

himself for his outlays in getting it or in preparing to
perform the duties imposed on him thereby. All of the
cases on that subject involve the payment of some money
by the agent to secure the agency, or the incurring of pre-
liminary expenses by him in preparing to execute the
powers given him. No reason can be given for the proposi-
tion that his agreement to faithfully perform the duties
required of him by his contract of employment will, as a
valuable consideration, make this rule applicable. The law
would make him subject to that obligation without any
stipulation. (2 Corpus Juris, p. 692; Civ. Code, sec. 2228;
*Calmon* v. *Sarraille,* 142 Cal. 641, [76 Pac. 486].)

Throughout the trial the counsel for the plaintiff ap-
parently assumed that in an agency of this character the
efforts of the agent to increase his compensation by in-
creasing the number of subscribers to the defendant's news-
paper within the described territory operated to give him
an interest in the principal's business, an interest distinct
and separate from that of the principal, and of which the
principal could not deprive him without his consent, or
without adequate compensation in damages equal to the
value of that interest. This is a manifest mistake in every
case in which the contract of agency does not so provide.
The contract in this case required that Otten should control
and conduct the route for the best interests of Spreckels
and maintain and preserve its extent and value to the satis-
faction of Spreckels. His commissions were allowed for
the purpose of paying him for this service. If he was
required by the contract to endeavor to increase the number
of subscribers within the territory he served, the com-
missions paid for that endeavor also, and his compensation
would be automatically increased proportionally thereby.
[5] In contemplation of law, in this and all similar cases,
the benefits of the agent's services go to the principal and
not to himself, and the agent has no interest therein. A
contract of agency which gives the agent a profitable em-
ployment by reason of the large compensation allowed him,
is, of course, valuable to him, and if he is allowed by his
principal to procure another to perform the service in his
stead, his agency may have a commercial value, similar in
many respects to a right of property. As between him and
the substitute with whom he agrees to abdicate, it may

indeed have all the attributes of property and the transfer may command a high price. But where the agency is revocable at will, as in this case, he has no interest or right which he can assert against his principal who revokes it, as the basis of damages for such revocation.

These principles are decisive of the case. The only breach of contract alleged was the revocation of the agency by Spreckels on January 1, 1909. The only damage alleged or proven was that Otten thereby was deprived of the agency. The agency being terminable at will by the principal and being for an indefinite term and without a valuable consideration, its revocation was not a breach of the contract. The plaintiff has no cause of action and the judgment should have been for the defendant. This renders it unnecessary to consider other questions presented.

The judgment is reversed.

Olney, J., Wilbur, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.

All the Justices concurred, except Wilbur, J., Lennon, J., and Sloane, J., who were absent.