[Civ. No. 4648. First Appellate District, Division One.—May 23, 1924.]

## GULF MAIL STEAMSHIP CO. (a Corporation), Appellant, v. W. A. HAMMOND STEAMSHIP COMPANY (a Corporation), Respondent.

[1] APPEAL—ORDER AMENDING NUNC PRO TUNC ORDER GRANTING NEW TRIAL—INCORPORATION OF IN TRANSCRIPT—SUGGESTION OF DIMINUTION OF RECORD—PROCEDURE.—It is proper procedure for a respondent, pending an appeal from an order granting a new trial, to make application to the appellate court upon suggestion of diminution of record, to have incorporated in the transcript an order of the superior court amending *nunc pro tunc* its previous order granting a new trial.

[2] NEW TRIAL—INSUFFICIENCY OF EVIDENCE TO JUSTIFY VERDICT—DISCRETION—APPEAL.—Insufficiency of the evidence to justify the verdict is a ground for new trial appealing peculiarly to the discretion of the trial court, and its order granting same shall not be disturbed upon appeal in the absence of a showing of abuse of discretion.

[3] CONTRACTS—PURCHASE OF INTEREST IN STEAMSHIP—NEW TRIAL.—In this action for the recovery of damages for an alleged breach of a purported contract for the purchase of an interest in a

---

1. See 2 Cal. Jur. 677, 680; 7 Cal. Jur. 613; 2 R. C. L. 154.
2. See 20 R. C. L. 273.

steamship, the trial court was justified in its action granting a new trial.

[4] ID.—NEW TRIAL—PROBATIVE FORCE AND EFFECT OF EVIDENCE—MATTER FOR DETERMINATION OF TRIAL COURT.—In such action, conceding that there was no conflict in the evidence, nevertheless the probative force and effect of the evidence was ultimately for the determination of the trial court upon the hearing of a motion for a new trial.

---

(1) 4 **C. J.**, p. 500, sec. 2257, p. 508, sec. 2269, p. 509, sec. 2271.
(2) 4 **C. J.**, p. 833, sec. 2816, p. 905, sec. 2874; 29 **Cyc.**, p. 1009.
(3) 29 **Cyc.**, p. 832. (4) 4 **C. J.**, p. 904, sec. 2874.

APPEAL from an order of the Superior Court of the City and County of San Francisco granting a new trial. John Hunt, Judge. Affirmed.

The facts are stated in the opinion of the court.

H. W. Glensor, Aitken, Glensor, Clewe & Van ·Dine and Frank W. Aitken for Appellant.

Nathan H. Frank, Irving H. Frank and Keith Ferguson for Respondent.

ST. SURE, J.—This is an action wherein plaintiff sought to recover damages for an alleged breach of a purported contract for the purchase of a 62/64ths interest in the steamship "Centralia." The cause was tried before a jury which gave plaintiff a verdict for twenty-five thousand dollars. The superior court thereafter made its order granting defendant's motion for a new trial. Pending appeal defendant made application to this court upon suggestion of diminution of record, to have incorporated in the transcript an order of the superior court amending *nunc pro tunc* a previous order granting a new trial. [1] Such procedure is ·proper (*Biaggi* v. *Ramont et al.*, 189 Cal. 675, 677 [209 Pac. 892]). The original order stated merely that a new trial was granted, without specifying the. grounds as required by section 657 of the Code. of Civil Procedure. Upon motion the trial court amended the original order to conform

---

4. See 20 R. C. L. 275, 276.

to the truth; incorporating therein the statement that the new trial was granted "upon the grounds of the insufficiency of the evidence to sustain the verdict, and that the verdict is against law." We have this day in *Gulf Mail Steamship Co.* v. *W. A. Hammond Steamship Co., ante,* p. 420 [227 Pac. 938], affirmed such action of the trial court, and the motion for diminution of the record is, therefore, granted. We are then to determine this appeal upon the corrected record.

The cause was submitted to the jury upon evidence offered by plaintiff, defendant contenting itself with cross-examination. The record relates that on April 24, 1917, the defendant, by its president, W. A. Hammond, addressed and delivered a letter to one Paul Hartman, which reads:
"Mr. Paul Hartman,
   "112 Market Street, San Francisco.
"Dear Sir:
   "Confirming our verbal understanding we offer to sell you the steamer 'Centralia' on the following terms:
   "Price: We will deliver to you 62/64ths interest of the steamer on the basis of $85,000 net to us for the entire ship. Payment to be made of $5,000 within one week from date to bind this contract, and $25,000 additional within thirty days time. Further payments to be made of $3,000 per month until balance is paid up. The deferred payments to bear interest of 6 per cent per annum.
   "You to pay for all stores on inventory at time of delivery based on market prices.
   "You also to keep the vessel insured in our favor to cover balance due at all times.
   "You are also to assume the wireless contract and take up unexpired insurance at time of delivery.
   "We will allow inspection of vessel during the next thirty days, drydocking to be at your expense.
   "In the event this sale is consummated we will make delivery on June 1, 1917, or as soon thereafter as practicable, depending upon her position. We would not, of course, take her off the coast before the date above named, and delay would be due to her absence on lumber business between California and northern ports.

"This offer is good for reply not later than the first day of May, 1917.

"Yours truly,
"W. A. HAMMOND COMPANY, INC.,
"W. A. HAMMOND."

Thereafter, on May 1, 1917, Paul Hartman, together with H. W. Glensor, plaintiff's attorney and secretary, called at the office of Stanley Pedder, attorney and secretary for defendant company. Glensor said to Pedder: "We have come to buy the ship . . . to close up for the 'Centralia' under this document" (referring to above quoted letter). Pedder looked at the letter and said: "This was signed 'W. A. Hammond, Inc.,' by mistake. . . . The W. A. Hammond Steamship Company is the real owner of the vessel; they are buying her under a contract from the Pollards under contract of sale, that is, they own an equitable interest in the vessel." Glensor replied: "Yes, I understand," and Pedder then said that the Hammond Steamship Company was buying the vessel under a contract of sale the same as the Hammond Steamship Company were going to give Glensor's principal. Whereupon, Glensor asked Pedder his interpretation of the clause in the letter of April 24th relating to the inspection of the vessel, which was not made clear, but Pedder remarked that he thought that the vessel should be put in a seaworthy condition when delivered and that he would so advise his principal. Other subjects were discussed relative to the proposed sale, among which was the equipment, and Glensor said: "Well, suppose we do this, suppose we put a clause in the contract when it is drawn up, that the first time the vessel comes into San Francisco. . . . Give us permission to go aboard and take an inventory of the deck and engine room supplies and equipment, and whatever that inventory discloses so will the ship be turned over to us when you finally deliver under your agreement," to which Pedder replied: "That is all right." Further conversation followed about the effect of deferred payments, and how they were to be made, which ended by the proposal of Pedder that as it was obvious they could not draw up the contract that day, that they should let the whole matter go over until a time agreed upon, and in the meantime Glensor and he would get together and draw up a contract, and when Hammond came back they would close negotiations and work out all the details, to which Glensor said:

"That is all right, except this; this is our last day under the option to pay you the $5,000, and what will we do about it?" Whereupon, it was agreed that the money be placed in escrow to be delivered to the defendant when the written contract was completed, to which proposal Glensor assented. Thereupon, the check of Paul Hartman, uncertified and unindorsed, was placed in the bank in accordance with the following agreement indorsed on the reverse side of the letter:

"It is hereby understood and agreed that the payment of $5,000.00 mentioned in the within option to be paid on or before the first day of May, 1917, may be deposited in escrow with the Anglo London Paris National Bank to be paid over to the W. A. Hammond Steamship Company upon completion of a contract between the said steamship company and the Gulf Mail Steamship Company if the contract is not completed by the 4th instant.

"W. A. HAMMOND STEAMSHIP COMPANY,

"By STANLEY PEDDER,

"Secretary."

The check was deposited with the instruction to the bank that if a contract to sell and buy the steamship "Centralia," executed by defendant as seller and plaintiff as buyer should be deposited with it by May 4, 1917, then the check was to be delivered to defendant, but to be returned to plaintiff if not delivered before May 4, 1917. It further appears from the testimony of Hartman that he and Glensor were requesting that the oil contract in the name of Pollard Steamship Company and certain tankage be included in the agreement of sale which was to be drawn up, and that was one of the reasons why the contract could not be signed at the first meeting of May 1, 1917. The meeting of May 1st was adjourned to the next day for the purpose of preparing a draft of the contract, and Pedder said: "We will draw up a form of contract, leaving the points which I do not understand, that is, regarding the oil contract and the equipment and supplies, open for negotiations between the parties when Mr. Hartman returns," to which Glensor replied: "That is reasonable." Pedder then remarked that there were to be no more "comebacks" about the equipment and oil contracts after the parties finally ascertained what equipment would be on the vessel on arrival in port, and the oil contract question was settled, and received the reply from either Glensor or Hartman, "That is understood."

On May 2d, the parties took up the draft of a contract, Pedder having dictated one, which was discussed with Glensor, and on which Glensor made pencil changes after taking it to his office; the oil contract, equipment, tankage, and insurance premiums were again discussed and the meeting was finally concluded by the remark of Pedder: "Suppose we leave those clauses and let them settle it between themselves at the time the contract is finally executed, because it is more a matter for the parties to decide on those things than it is for you and I." Glensor replied "All right, I agree with you Mr. Pedder, there is no use you and I wrangling here over the price and value of the ship's stores and those things, because when Mr. Hammond comes back he can take up with Mr. Hartman direct . . . then we can put the clauses in the contract accordingly." On May 3d Glensor talked with Pedder on the telephone and arranged that the meeting set for May 4th be continued to May 7th, and that the option be extended. There is some discrepancy as to the date, but it was May 7th that the meeting was to take place, and May 8th to which the option was extended. On May 7th Glensor called Pedder on the telephone and was advised that the parties would not negotiate further. Glensor, however, came to Pedder's office in the afternoon with Hartman and Smith of the Gulf Mail Steamship Company. Glensor opened the conversation with a suggestion regarding the oil contract, and was informed by Mr. Pedder that inasmuch as the proposition for the sale of the vessel had been left open for negotiation to agree on a contract if possible, and as his people were not disposed to agree on the matters under discussion, they would not enter into a contract. Proof as to plaintiff's damages was admitted in evidence.

Upon these facts the case was submitted to the jury with the result above mentioned.

Appellant contends that "nowhere in the case does any question of the sufficiency or insufficiency of the evidence arise"; and that the questions presented for decision are wholly questions of law. Adverting to the declarations made by the trial court in its order granting the motion for a new trial, appellant argues that the trial judge "made the original order because of his views of the law and not because of his views on the evidence." The highlights of the trial judge's order indicating his views are as follows:

"In this case the jury were, in substance, instructed that, in order to constitute a contract there must be a 'meeting of the minds,' and that, where a proposal is made, and only a qualified acceptance thereof results, such qualified acceptance is, in law, deemed a new proposal, and could be revoked at any time before its acceptance. These conditions were not, in my opinion, sustained by the evidence introduced on behalf of plaintiff. . . .

" . . . It appears that it was the undoubted intention of the parties herein to reduce their agreement to writing, and have it mutually signed by both parties thereto, and the jury were charged accordingly. . . .

" . . . The alleged contract herein violated the provisions of the statute of frauds. . . .

" . . . The amount of damages awarded in this case, even assuming the plaintiff is entitled to recover, was, in my opinion, grossly excessive. While I do not think that the jury, in arriving at their verdict, were influenced by passion or prejudice, it is clear that their verdict was not sustained by the evidence.

"For these reasons I am constrained to grant the defendant's motion for a new trial herein, and it is so ordered.

"It is my practice whenever a new trial is granted by the court in a jury case upon the ground of the insufficiency of the evidence to justify a verdict, to apply to the presiding judge," etc.

In a decision this day rendered in a companion case we have held that a document containing such language, properly entitled and signed and filed in open court by the trial judge, constituted an order granting a motion for a new trial upon the ground of the insufficiency of the evidence to sustain the verdict. A further consideration of the matter convinces us that this view is correct. Just what questions of fact or of law this record presents we do not propose to discuss, as we are satisfied that there must be a retrial of the case in the superior court. [2] Nor do we wish to be understood as adopting any of the views expressed by the trial judge in the order granting a new trial, nor as hinting or squinting at an expression of opinion upon any branch of this case, excepting the single point herein decided; and coming directly to that, it should only be necessary to mention the well-settled and familiar rule which says that insufficiency of the evidence to justify the verdict

is a ground for new trial appealing peculiarly to the discretion of the trial court, and its order granting same shall not be disturbed upon appeal in the absence of a showing of abuse of discretion. (Sec. 535, 2 Cal. Jur., "Appeal and Error.")

Appellant stresses the point that the evidence at the trial was undisputed; that "none of this testimony was contradicted or rebutted . . . ; that the defendant introduced no evidence whatever." [3] In answer, we will say that a reading of the record convinces us that the trial court was justified in its action granting a new trial. [4] Paraphrasing language used by Mr. Justice Lennon in a case wherein the facts were somewhat similar (*Meinberg* v. *Jordan,* 29 Cal. App. 760, 762 [157 Pac. 1005]), we say further, in reply, conceding, as appellant contends, that there is no conflict in the evidence, nevertheless the probative force and effect of the evidence was ultimately for the determination of the trial court upon the hearing of a motion for a new trial. This rule is also stated in *Otten* v. *Spreckels,* 24 Cal. App. 251, 257 [141 Pac. 224], wherein it was said that "the rule (elementary and commonly familiar in our system of jurisprudence) is that the plaintiff in a civil action must establish his cause by a preponderance of proof; but although many witnesses may testify directly in favor of his position, and no adversary testimony directly adduced, it is still with the jury, in the first instance, and finally with the court, where a new trial is asked on the ground stated, to say whether such testimony, when subjected to the legal tests whereby the probative value of evidence is to be judged, measures up to the requirement of the law as to the degree of proof essential to the support of an issue of fact."

No abuse of discretion is disclosed by the record and the order granting a new trial is, therefore, affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 17, 1924.

All the Justices concurred.